**EMBASSY PICTURES CORPORATION,**
v.
**F. C. HUDSON et al.**
Civ. No. 5022.

United States District Court
W. D. Tennessee, W. D.
July 9, 1965.

W. J. Michael Cody, Memphis, Tenn., Ephraim London, New York City, for plaintiff.

Clifford Pierce, Jr., Asst. City Atty., Memphis, Tenn., for defendant.

BAILEY BROWN, District Judge.

In this action, plaintiff sought (1) a holding that the movie in question, "Women of the World," is not subject to censorship under the applicable federal constitutional standard and (2) a holding that the city ordinance in question is, applying federal constitutional standards, void on its face. Plaintiff moved for a summary judgment as to both issues. We have heretofore granted plaintiff's motion in part, holding that the movie was not subject to censorship and enjoining defendants from preventing or interfering with the showing of this movie. We took under advisement the second issue as to whether the ordinance is void on its face. We did this because one aspect of this constitutional question was then before the Supreme Court of the United States, and that Court has since decided that case. (Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).)

Plaintiff makes two separate Fourteenth Amendment attacks on this city ordinance which are: (1) that the standards for censorship contained in the ordinance are unconstitutionally vague and indefinite; and (2) that the system of pre-censorship by the Censor Board provided for in the ordinance is unconstitutional. It will be necessary, in ruling on these questions, to describe the relevant ordinance provisions.

Under Secs. 943 and 944, it is made unlawful to exhibit any immoral, lewd, lascivious or obscene movie or to exhibit any movie which is inimical to the public safety, health, morals, or welfare or which denounces, derides or seeks to overthrow the present form of national government. A Censor Board is created (Sec. 945) which has the authority to prohibit the exhibition of any movie which it finds to be in any of these categories. It is made unlawful (Sec. 946) to disobey any lawful order of the Censor Board. Further, the Censor Board is authorized (Sec. 947) to suspend the exhibition of any movie which has been shown contrary to its lawful order and to close any theatre in which a movie has been shown contrary to its lawful order. The Censor Board is authorized (Sec. 948) to order a preview of all movies.

As stated, plaintiff's first contention is that *all* of the standards for censorship contained in the ordinance are unconstitutionally vague and indefinite. It is not proper, however, for this Court to determine whether *all* of these standards are unconstitutionally vague and indefinite because, in the instant case, the Censor Board prohibited the showing of the movie only on the ground that it is "obscene." Jos. Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); 16 C.J.S. Constitutional Law § 94, p. 306. We will, therefore, deal solely with the

question whether the standard of "obscene" is sufficiently definite. (It should be noted, however, that if the question were properly before the Court, some of the other standards contained in the ordinance would raise a serious constitutional issue. Jos. Burstyn, Inc. v. Wilson, supra; Superior Films, Inc. v. Dept. of Education, 346 U.S. 587, 74 S.Ct. 286, 98 L.Ed. 329 (1954); Gelling v. State of Texas, 343 U.S. 960, 72 S.Ct. 1002, 96 L.Ed. 1359 (1952).)

■■ While a movie cannot constitutionally be censored on grounds of obscenity unless " * * * to the average person, applying contemporary community standards, the dominant theme of [the movie] taken as a whole appeals to the prurient interest" (Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964)), it does not follow that it is constitutionally necessary that the ordinance set up the standard for censorship in precisely these words. In the earlier cases of Roth v. United States, and Alberts v. California, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), heard and decided together, the Supreme Court for the first time expressed the constitutional standard in the words just quoted. Yet, in Roth and Alberts, it upheld, against a contention of unconstitutional vagueness, a federal statute making it a crime to mail material that is "obscene, lewd, lascivious or filthy * * or other publications of an indecent character," and upheld, against the same contention, a state statute making it a crime to sell or advertise material which is "obscene or indecent." We see no reason why these decisions should not apply here. We must assume that this Censor Board would apply this constitutional standard which is the law of the land, as the Supreme Court assumed that judges and juries in criminal trials would apply this constitutional standard which is the law of the land. We therefore conclude that the standard "obscene" contained in the ordinance is not unconstitutionally vague or indefinite.

We come now to plaintiff's other contention, which is that the system of pre-censorship provided for in the ordinance is unconstitutional. In this connection, plaintiff does not contend that *all* pre-censoring of movies is *per se* unconstitutional, recognizing that Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961), held otherwise. Rather, plaintiff contends that this particular system for pre-censoring movies is unconstitutional because it does not contain the necessary procedural safeguards spelled out by the Supreme Court in Freedman v. Maryland, supra.

In the Freedman case, petitioner had been convicted of violating a Maryland statute by showing a film without first having obtained a license from a Board of Censors. Under the Maryland statute, if the Board refused to issue a license for a movie upon application, the applicant was entitled to a re-examination of the movie by the Board with the applicant present, and was further entitled to appeal an adverse decision to the Baltimore City Court and thence to the state Court of Appeals. The Supreme Court held that this system of pre-censorship was unconstitutional. In so doing, it held that the following procedural safeguards must be present in a pre-censorship system:

1. The burden of proof must always be on the censor to show that the movie is unprotected expression.

2. The censor must act promptly and within a fixed period as to all applications, and if the action of the censor results in the prohibition of the showing of the movie, the censor must promptly and within a fixed period bring suit in a court to restrain the exhibition of the movie.

3. The judicial review must be prompt and within a fixed period.

■ It is clear that the Memphis ordinance does not meet the Freedman tests of constitutionality. In the first place, the action of the Censor Board prohibiting the showing of a movie is "final" and is subject to judicial review only "for illegality or want of jurisdiction." Secondly, there is no requirement that the

Censor Board act promptly and within a fixed period. Thirdly, the burden is on the person seeking to exhibit the movie to seek judicial review. Fourthly, there is no provision for judicial review promptly and within a fixed period.

But defendants argue that the Freedman case is not applicable here because, while the Censor Board has authority to require previews, there is nothing in the record to show that it exercised this authority and the record affirmatively shows that plaintiff "voluntarily" submitted this movie to the Board for examination. The plaintiff could have, argue defendants, simply exhibited the movie and in doing so incurred the risk only of (1) a subsequent order by the Board prohibiting the exhibition and (2) a criminal prosecution. Therefore, conclude defendants, this is not a system of prior restraint as was before the Court in Freedman

The answer to this argument is that plaintiff *did* apply for a determination by the Censor Board and the Censor Board, under its ordinance authority, *did* examine the movie and *did* order that it not be shown in its entirety. After the Censor Board took this action, plaintiff and those associated with it in the proposed exhibition of the movie, if they persisted, had these alternatives: (1) they could seek the limited judicial review of the action of the Board or (2) they could disobey the order of the Board which *itself* is a crime and which *itself* subjects them to the civil sanctions of having the exhibition suspended and the theatre closed. Moreover, where a Censor Board has the authority to prohibit the exhibition of a movie on the many and diffuse grounds set out in this ordinance, and where the disobedience of its orders subjects one to criminal and civil sanctions, it can hardly be said realistically that movie exhibitors are acting voluntarily in seeking a ruling from the Board before making the commitments and incurring the expense involved in actually showing the movie. We conclude that the Memphis ordinance does constitute a system of prior restraint within the contemplation of Freedman and therefore must contain the procedural safeguards set out in that opinion, for the Court said (at p. 738 of 85 S.Ct., and at p. 654 of 13 L.Ed.2d) :

> "Although the Court has said that motion pictures are not 'necessarily subject to the precise rules governing any other particular method of expression,' Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 503 [72 S.Ct. 777, 96 L Ed. 1098, 1106], it is as true here as of other forms of expression that '[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.' Bantam Books, Inc. v. Sullivan, supra, 372 U.S. at 70 [83 S.Ct. at 639, 9 L.Ed.2d at 593]. '* * * [U]nder the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity * * * without regard to the possible consequences for constitutionally protected speech.' Marcus v. Search Warrant, 367 U.S. 717, 731 [81 S.Ct. 1708, 6 L.Ed.2d 1127, 1136]. The administration of a censorship system for motion pictures presents peculiar dangers to constitutionally protected speech."

Plaintiff is therefore entitled to a declaration that the ordinance in question on its face violates the Fourteenth Amendment.

An order will be prepared for entry.