**ALLIED ARTISTS PICTURES CORPORATION et al., Plaintiffs,**

**v.**

**Ronald S. ALFORD et al., Defendants.**

**No. C–74–533.**

United States District Court, W. D. Tennessee, W. D.

Feb. 13, 1976.

Walter P. Armstrong, Jr., Memphis, Tenn., Barbara Scott, Motion Pictures Ass'n of America, New York City, for plaintiffs.

Ross B. Clark, II, Charles V. Holmes, Asst. City Atty., Memphis, Tenn., for defendants.

## MEMORANDUM OPINION

WELLFORD, District Judge.

In August, 1968, the City of Memphis enacted an ordinance which both defines what is "obscene to juveniles" and prohibits generally the dissemination to juveniles (defined as less than eighteen (18) years of age) of material which falls within that definition. The ordinance is similar to a New York statute which was approved by the Supreme Court in *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Since 1968, the ordinance has been amended several times adding a section on "excess violence"[1] and a section dealing with "patently offensive language,"[2] and it is now codified in the code of ordinances of the City of Memphis, §§ 22–23.1 through 22–23.4.

The Memphis Board of Review (hereinafter referred to as "The Board") was established in 1969. Shortly thereafter, two of the Board's original members, attorneys, drafted legislation formally establishing the Board and defining its duties and powers. The ordinance is now codified in the Code of Ordinances of the City of Memphis, §§ 31–11.1 through 31–15.

The Board's jurisdiction is limited to the control of the dissemination to juveniles of material obscene as to them defined in § 22–23.1. The Board is empowered, however, to bring suits to enjoin such dissemination (§§ 31–12, 31–13; § 31–13 requires that "[o]n any application for a temporary injunction, the Board of Review shall give notice to the theatre owner of its intention to apply

1. "Excess violence". "Excess violence" means the depiction of acts of violence in such a graphic and/or bloody manner as to exceed common limits of custom and candor, or in such a manner that it is apparent that the predominant appeal of the material is portrayal of violence for violence's sake.

2. "Obscene to Juveniles." "Obscene to juveniles" means that quality of any description or representation in whatever form, of nudity, sexual conduct, sexual excitement, excess violence, or sado-masochistic abuse, when it:

\* \* \* \* \* \*

(4) There is included language in a motion picture or stage presentation which refers to portions of the human body, or sexual functions, excretal functions or excreta in terms which are patently offensive to prevailing standards of decent language in the community as a whole and is utterly without redeeming social importance for juveniles."

for an injunction"). The Board may investigate complaints of such dissemination and report the results to the police department or attorney general (§ 31–14.1). In addition, § 31–13 provides that "nothing in §§ 31–11.1 through 31–15 shall prevent voluntary conferences between the board of review and exhibitor[s] concerning the exhibition of any motion picture film". The Board is thus, in effect, one of the governmental agencies concerned with and about the enforcement of the Memphis *"Ginsberg"* Ordinance dealing with obscenity and juveniles.

In purported compliance with its obligations, the Board has established a procedure whereby it screens any film to be exhibited to juveniles in Memphis in order to determine whether it believes the film to be obscene to juveniles within the meaning of the Ordinance in question. The Secretary of the Board attempted to have at least three members at the screening.[3] There were occasions, however, when less than three attended. Immediately following the screening, the members viewing the screening informed the Secretary whether or not in their opinion the film violated the Memphis Ordinance in question and was, therefore, obscene as to juveniles within the meaning of the Ordinance. This information, including the specifics of the purported violation, was recorded in the Board's records. Board members are generally required to submit written forms on each film screened by them.

If a violation was reported, the Secretary immediately sent a form letter to Memphis exhibitors, informing them that the Board had found the film to be in violation of the Ordinance and that it must be shown on a restricted basis (minors not to be permitted into the theatre unless accompanied by a parent or legal guardian). Copies of these letters, as indicated, were sent to the City Attorney's office and the Director of Police. These letters were sent out immediately upon receipt of appropriate information from the screening committee, although the Board, *as a whole*, did not actually vote on a film until the next regular meeting following the screening. Usually the entire Board approved the opinion of and action initiated by the screening committee.

Upon receipt of such a "violation" letter from the Board, exhibitors sometimes called the Board Secretary for more specific information. Based on information furnished, the Secretary usually was able to tell the exhibitor exactly what words and/or scenes were found to offend the Ordinance. To avoid restricting the film, the Memphis exhibitor often informed the Secretary that the offending scenes or words would be deleted. It was understood that after the required deletions were made, films could be exhibited on an unrestricted basis. This became a "fairly common and accepted practice" as expressed by several members of the Board.

After a film was opened for public exhibition, exhibitors were to continue to comply with the Board's recommended action. If the Secretary found, through checking newspaper advertisements or otherwise, that a film found to be in violation by the Board was not restricted by the exhibitor, she notified the Chairman. The exhibitor was usually then reminded of the Board's opinion and recommendation. If a film continued to play to an unrestricted audience, Board members were requested to reschedule a screening of the film in question. Board members did, moreover, attend public exhibitions on their own initiative and report violations to the Board and they sometimes spoke directly to exhibitors reminding them that a film had been

**3.** Until immediately after the filing of the instant lawsuit, the Board operated pursuant to an agreement, styled a "Commitment of Cooperation," signed by Memphis film exhibitors. Generally, in this agreement the exhibitors agreed that "all motion pictures to be shown in Memphis rated 'G' or 'GP' [now 'PG'] by the Motion Picture Association, or unrated and planned for exhibition to juveniles, will be made available for pre-screening by the Board of Review or a committee thereof".

thought to be in violation of the Ordinance. Occasionally, they informed exhibitors of their intention to call the police should they refuse to comply with Board recommendations.

This suit, filed pursuant to 42 U.S.C. § 1983, challenges, on asserted First Amendment grounds, this Ordinance of the City of Memphis and the actions of defendant Board members under color thereof which assertedly create a system of prior restraint on the exhibition of motion pictures in Memphis. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(3) and (4), 2201 and 2202.

Plaintiffs are eight major distributors of motion picture films for exhibition by individual theatres across the United States, including Memphis, exhibited pursuant to individual license agreements between plaintiffs and individual theatre exhibitors, pursuant to which agreements plaintiffs receive as their license fees a percentage of the gross box office receipts. Plaintiffs neither own nor themselves operate theatres in Memphis.

Defendants are sixteen individuals who have comprised the membership of the Board of Review of the City of Memphis, together with the Memphis Board of Review and the City of Memphis, a municipal corporation. As a result of defendants' actions, it is complained that many of the films distributed by plaintiffs have not been exhibited to minors in Memphis theatres unless accompanied by a parent, guardian or spouse eighteen (18) years old or over, or else have been unrestrictedly exhibited to minors only after portions thereof have been deleted. Plaintiffs assert that the restrictions imposed on the admission of minors to view certain films, and/or the deletion of portions of other films, have been accomplished wholly without judicial superintendence, and they claim these actions have diminished the income which plaintiffs might otherwise have received as license fees, but have also deprived them of a First Amendment right.

Presently before the Court on cross motions for summary judgment, the action, after a hearing on the motions and consideration of the pleadings, briefs, and much discovery evidence filed, presents no substantial contested issue of material fact and is in a proper posture for disposition on the merits.

The ordinances in question provide criminal penalties for dissemination to juveniles of "obscene" material, and Sections 31–11.1 through 31–15 establish and define the authority of the Memphis Board of Review as, generally, to investigate complaints of dissemination to juveniles of matter deemed "obscene" and to report the results of its investigation to either the police department or the attorney general (§ 31–14.1), and to seek injunctions restraining the presentation to juveniles (age of eighteen) of "obscene" motion pictures.[4]

## PRIOR RESTRAINT

Motion pictures are a form of "expression" within the ambit of the First Amendment. *Interstate Circuit v. Dallas*, 390 U.S. 676, 682, 88 S.Ct. 1298, 1302, 20 L.Ed.2d 225, 230 (1968); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). First Amendment freedoms are made applicable through the Fourteenth Amendment to the states, and thereby to municipal ordinances; thus actions of officials pursuant thereto are under color of state law. *Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); 42 U.S.C. § 1983.

As the Supreme Court recently reiterated in *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448, 459 (1975), in the context of a Tennessee municipality's denial of use of municipal facilities for a theatrical performance,

---

**4.** Sections 22–23.1, 22–23.2, and Sections 31–11.1 through 31–15 of the Memphis Code are attached as an appendix to this Memorandum Opinion.

"[p]rior restraints are not unconstitutuional *per se*" but "[a]ny system of prior restraint . . . 'comes to this court bearing a heavy presumption against its constitutional validity.'"

The ordinances in controversy seek to impose some regulation upon the distribution of certain films and forms of expression to juveniles. The Supreme Court itself has recognized that motion pictures may have a particularly pernicious effect upon youth, *Joseph Burstyn, Inc. v. Wilson, supra,* 343 U.S. page 502, 72 S.Ct. page 780, 96 L.Ed. page 1106, and that " . . . because of its strong and abiding interest in youth, a State may regulate the dissemination to juveniles of, and their access to, material objectionable as to them, but which a State clearly could not regulate as to adults." *Interstate Circuit v. Dallas, supra,* 390 U.S. page 690, 88 S.Ct. page 1306, 20 L.Ed.2d page 235, citing *Ginsberg v. New York, supra.*

"Prior restraint" . . . "is not a self-wielding sword," and the determination whether or not unlawful "prior restraint" exists involves a pragmatic examination of "the operation and effect of the statute" in the particular circumstances of each case. *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 441–442, 77 S.Ct. 1325, 1327–1328, 1 L.Ed.2d 1469, 1473–1474 (1957).

There is here no total suppression of a form of expression sought to be disseminated. *Cf. Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). A system of administrative classification of motion pictures as "suitable for young persons" or "not suitable for young persons," where the "not suitable" films were not suppressed, but could be exhibited only upon the exhibitor's obtaining a special license and advertising the particular classification, was held to be an improper "prior restraint" in *Interstate Circuit v. Dallas, supra.* In *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), a system of "informal censorship" whereby an administrative board effectively regulated the distribution of material by persuasion and intimidation, where its only authority was investigatory, was held to be, in its practical effect, a system of invalid "prior restraint." See also *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 556–557 at fn. 8, 95 S.Ct. at 1245–1246, 43 L.Ed.2d at 457–458.

In the instant case, the Board of Review is authorized to investigate and report instances of suspected violations, and to apply for injunctions against the exhibition of motion pictures suspected of containing illegal "obscene" expression. Code Section 31–11.5 also authorizes members of the Board and its Secretary "to call upon the police force for assistance in the enforcement of this Chapter or any other ordinance of the City."

In its operation under the ordinances, the Board has sought injunctive relief against the exhibition of motion pictures apparently on only two occasions, despite its authority and "duty to make application to a court of competent jurisdiction for an injunction restraining the commission of such act" (whenever it finds probable cause to believe an exhibitor to be showing "obscene" films to juveniles). (Ord. § 31–13).

In pursuing an alternative remedy to the one authorized by its enabling ordinance, the Board entered into a "Commitment of Cooperation" (dated March 16, 1970, later amended) with local Memphis film exhibitors, whereby exhibitors agreed to submit motion pictures to Board screening "as far as possible in advance" of initial exhibition of every motion picture to be shown to juveniles. On October 5, 1971, the agreement was superseded whereby "[a]ll motion pictures rated 'G' or 'GP' [now 'PG'] by the Motion Picture Association, or unrated and planned for exhibition to juveniles" were to be made available for prescreening by the Board. Section 31–13 also encourages the Board to have "voluntary conferences" with exhibitors regarding enforcement of the ordinance.

The plaintiffs contend that the Board and its members achieved the effect of unlawful censorship or "prior restraint" by failing to seek injunctive relief in a court, through threats of legal reprisal made to exhibitors, and by the coercive effect of the "violation" letters sent to exhibitors. Although the agreements were apparently made in full good faith by defendants and Memphis exhibitors, are they binding upon plaintiffs? Evidently these parties wished to avoid the expense and possible disapproval of legal actions regarding asserted display of obscenity to juveniles unguided by their parents who were not otherwise put on notice.

■ Most reluctantly, but guided by the Supreme Court in somewhat similar situations, the Court concludes that the actions of the Board under color of authority have operated, when viewed realistically, as a "prior restraint". *Bantam Books v. Sullivan, supra; Interstate Circuit v. Dallas, supra.* The Court must look through form to substance in determining whether a system of "informal censorship" has, in practical effect, been formulated. *Bantam Books, supra,* 372 U.S. page 67, 83 S.Ct. page 637, 9 L.Ed.2d page 591. It is concluded that local exhibitors cooperated, but in a sense involuntarily, with the Board so that restrictions were placed upon expression initially produced and distributed by plaintiffs who now somewhat belatedly complain (explanation for the delay is that local exhibitors insisted). A waiver of constitutional rights is possible, but such a waiver of fundamental rights is not lightly inferred or assumed. *See Smith v. United States,* 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Court finds that there was a waiver by the exhibitors in Memphis, but not by plaintiffs.

The action by the exhibitors is not, under these circumstances, binding upon the plaintiffs, their relationship being merely contractual, although, of course, plaintiffs were fully advised of the waiver and agreements and could have sought other exhibitors or could have sued at an earlier time. Plaintiffs do have standing to bring this action despite being dilatory in challenging prior procedures. *See Bantam Books, Inc. v. Sullivan, supra,* 372 U.S. pp. 64–65, at fn. 6, 83 S.Ct. pp. 636, 9 L.Ed.2d pp. 589–590; *Interstate Circuit v. Dallas, supra,* 390 U.S. pp. 683–684, 88 S.Ct. pp. 1302–1303, 20 L.Ed.2d pp. 231–232; *Embassy Pictures v. Hudson,* 226 F.Supp. 421 (W.D.Tenn.1964).[5]

■ To be held lawful, the defendants' action and the ordinance procedure must fit within a narrowly defined exception to the prohibition against prior restraints, and must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected expressions. Obscenity, of course, is one of the exceptions to the prohibition against prior restraints, *Near v. Minnesota, supra.* Are the Memphis ordinance procedural safeguards sufficient as enumerated in *Freedman v. Maryland,* 380 U.S. 51, 58–59, 85 S.Ct. 734, 738–739, 13 L.Ed.2d 649, 654–655 (1965)? As restated in *Southeastern Productions, supra,* 420 U.S. at 560, 95 S.Ct. at 1247, 43 L.Ed.2d at 460, the *Freedman* rule is that:

"A system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: *First,* the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second,* any restraint prior to judicial review can be imposed only for a specified brief period and only for the pur-

5. The defendants stress the good faith effort of cooperation between local exhibitors and the Board to allow "compliance" with the ordinance without the burden of judicial interference, a result thought salutary to the exhibitors. What is apparently logical and economical in this approach is not necessarily constitutional with respect to the contrary interest of plaintiffs in the distribution of their motion pictures. Interestingly enough, the other two Judges of this Court were involved in the latter "censorship" case, one as a then Assistant City Attorney.

pose of preserving the status quo. *Third,* a prompt final judicial determination must be assured."

The plaintiffs urge that the ordinance is unconstitutional because it does not require the Board to seek an injunction within a *specified* brief period of time after notice to the exhibitor that the film is in violation of the ordinance; relying upon the statement in *Freedman, supra,* 380 U.S. pp. 58–59, 85 S.Ct. p. 739, 13 L.Ed.2d p. 654:

"The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. See *Bantam Books, Inc. v. Sullivan, supra*; *A Quantity of Books v. Kansas,* 378 U.S. 205 [84 S.Ct. 1723, 12 L.Ed.2d 809]; *Marcus v. Search Warrant, supra* [367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127]; *Manual Enterprises, Inc. v. Day,* 370 U.S. 478, 518–519 [82 S.Ct. 1432, 8 L.Ed.2d 639]. To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film."

The Supreme Court applied *Freedman, supra,* in *Teitel Film Corp. v. Cusack,* 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968), and held that a Chicago motion picture ordinance failed to meet these standards, in part because provisions for administrative steps involved failed to *assure* that the license or application for injunction would occur promptly.

In *Embassy Pictures Corp. v. Hudson,* 242 F.Supp. 975 (W.D.Tenn.1965), Chief Judge Bailey Brown of this Court held unconstitutional on its face a prior Memphis ordinance setting up a censor board for failure to meet the *Freedman* standards, in part because the ordinance did not require "that the censor Board act promptly and within a fixed period." *Id.,* at 977–978. Cf. *United Artists Corp. v. Wright,* 368 F.Supp. 1034 (M.D.Ala.

1974) (three-judge district court invalidating Alabama obscenity statute under *Freedman* standards).

Unlike the situation in these above-cited cases, however, in the present case the ordinance itself apparently is in substantial compliance with *Freedman,* except only for omission to specify a particular time within which injunctive relief must be sought. No complicated administrative procedure delays the opportunity for court action or review, and a reasonable and prompt time here may be inferred. Of course, exhibitors themselves may also, at any time, apply for declaratory relief under appropriate circumstances if in doubt. If the Board were to follow the clear mandate of ordinance section 31–13, that upon a finding of probable cause the Board "shall have the *duty*" to apply for an injunction within a prompt and reasonable time; it meets constitutional standards in our opinion.

■ The Court concludes, therefore, that the ordinance is not unconstitutional on its face as a prior restraint. Certain actions of the Board, however, as indicated, even though in good faith, have not been in compliance with the Ordinance. Adequate relief to the plaintiffs can be achieved through guidelines to the Board restraining the Board, or any of its members, from any remedy and procedure, except as provided in the form or manner in Memphis ordinance sections 31–12, 31–13 and 31–14.1.

This holding would appear to insure that if and as the Board acts to restrain expression in the form of alleged obscenity to juveniles, it should and must act under judicial supervision through seeking an injunction, or merely advising the attorney general or police department of a suspected violation of the criminal code.

There is no showing here under the ordinance, properly administered, that a film might be withheld for a long period of time pending application for injunctive relief. Under this holding, the Board must follow the procedure specifi-

cally provided for in the ordinance itself. If the Board in good faith, based on probable cause, determines that a certain film is obscene to juveniles, it may present the matter to a court of competent jurisdiction for injunction, or it may request the attorney general or police department, in an appropriate case, to enforce the ordinance. Perhaps under further consideration of this "prior restraint" issue, the concurring and dissenting views of Justices Clark and Harlan in *Bantam Books, Inc. v. Sullivan, supra*, 372 U.S. pp. 74–83, 83 S.Ct. pp. 644–645, 9 L.Ed.2d pp. 595–600, may be adopted by appellate courts and the present procedures of the Memphis Board justified except for the particular language utilized in their notices.

### OBSCENE LANGUAGE SECTION

■ The plaintiffs next contend that ordinance section 22–23.1(b)(4) is unconstitutionally overbroad on its face. That section is set out in footnote No. 2. This section purports to regulate language and not conduct. As stated in *Gooding v. Wilson,* 405 U.S. 518, at 520, 92 S.Ct. 1103, at 1105, 31 L.Ed.2d 408, at 413 (1972): "It can, therefore, withstand . . attack upon its facial unconstitutionality only if, as authoritatively construed by the [state's] courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments, *Cohen v. California,* 403 U.S. 15, 18–22 [91 S.Ct. 1780, 29 L.Ed.2d 284] . . . .". This particular section describing misdemeanor behavior has not been construed by state courts. The ordinance, to withstand attack, must define "the standard of responsibility with requisite narrow specificity." *Gooding, supra,* at 527, 92 S.Ct. at 1108, 31 L.Ed.2d at 417. Cf. *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 34 L.Ed.2d 214 (1974).

The defendants rely upon the proposition that a state or municipality "[may] adopt more stringent controls on communicative materials available to youths

than on those available to adults," *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 212, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125, 133 (1975), or the "variable obscenity" rule of *Ginsberg v. New York, supra.* But, as the Supreme Court stated recently in *Erznoznik, supra,* p. 213, 95 S.Ct. p. 2275, 45 L.Ed.2d p. 133 (footnote 10): "It is clear, however, that under any test of obscenity as to minors not all nudity would be proscribed. Rather, to be obscene 'such expression must be, in some significant way, erotic.' *Cohen v. California,* 403 U.S. 15, 20 [91 S.Ct. 1780, 29 L.Ed.2d 284] (1971)." [6]

The Court in *Erznoznik, supra,* p. 216, 95 S.Ct. p. 2276, 45 L.Ed.2d p. 135, however, also stated:

"This Court has long recognized that a demonstrably overbroad statute or ordinance may deter the legitimate exercise of First Amendment rights. Nonetheless, when considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program. In accommodating these competing interests the court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts, . . . and its deterrent effect on legitimate expression is both real and substantial." [citations omitted].

When read in its context, it is unclear precisely how subsection (b)(4) is to be construed with the rest of Section 22–23.1. It appears reasonable and logical that this section provides an additional and separate test of what may be "obscene to juveniles".

■ This uncertainty and that the construction of this subsection (4) in question may have been unclear to Board members is demonstrated in a determination that certain words or phrases, regardless of contextual considerations, would be deemed obscene and vio-

---

6. Note, however, the dissent of Justice Blackmun joined in or concurred with (at least in part) by three other judges.

lative of the ordinance. Subsection (4), as it is written, is vague and overbroad, inviting infringement upon protected First Amendment expression. *Cohen v. California, supra.* With its deletion, however, the ordinance is similar to the statute approved in *Ginsberg, supra.* This Court regrets the necessity under present Supreme Court standards that vulgar, offensive, filthy and gutter type language cannot be, in and of itself, "obscene to juveniles", and subject to elimination because of so-called "freedom" of speech. Many recent films distributed by plaintiffs seem regrettably to go out of their way to insert such language even in 'PG' rated films. This section, however, is overbroad and could be aided by guidelines set out in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and its progeny. Certainly, language itself may be a factor in determining whether a film, or a part thereof, is obscene to minors. Note also the dissent in *Lewis v. City of New Orleans*, 415 U.S. 136, 142, 94 S.Ct. 970, 976, 39 L.Ed.2d 214, 224 (1974) wherein the expression may bring about an imminent breach of the peace.

## EXCESS VIOLENCE SECTION

Section 22–23.1 defines "obscene to juveniles" as "excess violence", which is defined in § 22–23.1(g), set out in footnote No. 1.

 Plaintiffs attack this section as unconstitutionally vague. The "vagueness" doctrine proscribes criminal statutes which lack clear definition and import so that no fair warning or notice is provided. It is impermissible to set out a law violation where the offense is too subjective, involving a risk of discriminatory enforcement of the law, again inhibitory to First Amendment freedoms. See *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227–228 (1972).

 Under the holdings of *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948), and *Interstate*

*Circuit, Inc. v. Dallas, supra*, considering the statutes and ordinances there considered, section 22–23.1(g) is impermissibly vague. As necessarily applied by Board members, the section constituted an excessively subjective judgment as to what might be deemed "obscene to juveniles". Again, society and parents are to be commended for current concern about the extraordinary portrayals of violent conduct on movie (as well as television) screens. If carefully drawn, under obscenity standards, such portrayals might be subject to permissible criminal standards. The Court reaches this conclusion with particular regret as to excision of two sections of the ordinance, recognizing the difficulty confronting legislatures and councils under Supreme Court standards and recognizing the laudable intent of the drafters of this section dealing with undoubted pernicious effects of excessive violence portrayed in the communicative arts upon youth (as well as adults).

 It is noted that subsections (c), (e) and (f) are markedly more specific than is subsection (g). *Cf.* Chief Justice Burger's examples of one of the obscenity standards in *Miller v. California*, 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973), and see *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1061 (1942). Violence in the form of sadism or in relation to prurient acts may properly be considered in determining obscenity, or may be taken into account as an important factor in defining obscenity.

## SEVERABILITY

 Drafters of the Memphis Code (Section 1–11) in question provided that if particular provisions were held invalid, they could and should be severed so that the remainder of the ordinance could be saved. Striking out sections 22–23.-1(b)(4) and 22–23.1(g), does not impair the continued validity of the remainder of the challenged ordinance. See generally, *Jones v. City of Jackson*, 195 Tenn. 329, 259 S.W.2d 649 and 16 Am.Jur.2d "Constitutional Law" § 181 *et seq.*

## CONCLUSION

Plaintiffs' motion for summary judgment is granted only in part. The Court will enjoin members of the Memphis Board of Review, or the Secretary or other officers of that Board, from acting in any form or procedure to inhibit the exhibition of films to juveniles, except through and as provided for in Sections 31–12 and 31–13, and through the investigation and report procedure provided for in Section 31–14.1, Ordinances of the City of Memphis, Tennessee.

The Court declares Section 22–23.-1(b)(4) of the Code of Ordinances of the City of Memphis, Tennessee, unconstitutionally overbroad; and declares Section 22–23.1(g) of the Code of Ordinances of the City of Memphis, Tennessee, unconstitutionally vague.

In all other respects, the relief sought by the plaintiffs is denied.

No award of costs or attorneys fees is to be made under the circumstances. The parties may present a proposed order or orders in conformity with this Opinion.

## APPENDIX

Sec. 22–23.1. Juveniles—Definitions and penalty applicable to sections 22–23.2 through 22–23.4.

The following definitions are applicable to sections 22–23.2 through 22–23.4.

(a) *Juvenile.* "Juvenile" means any person less than eighteen (18) years old.

(b) *Obscene to juveniles.* "Obscene to juveniles" means that quality of any description or representation in whatever form, of nudity, sexual conduct, sexual excitement, excess violence, or sado-masochistic abuse, when it:

(1) Predominantly appeals to the prurient, shameful or morbid interests of juveniles; and

(2) It is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for juveniles; and

(3) Is utterly without redeeming social importance for juveniles; or

(4) There is included language in a motion picture or stage presentation which refers to portions of the human body, or sexual functions, excretal functions or excreta in terms which are patently offensive to prevailing standards of decent language in the community as a whole and is utterly without redeeming social importance for juveniles.

(c) *Sexual conduct.* "Sexual conduct" means acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such a person be a female, breast.

(d) *Sexual excitement.* "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

(e) *Sado-masochistic abuse.* "Sado-masochistic abuse" means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

(f) *Nudity.* "Nudity" means the showing of the human male or female genitals, pubic area or buttocks, with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

(g) *Excess violence.* "Excess violence" means the depiction of acts of violence in such a graphic and/or bloody manner as to exceed common limits of custom and candor, or in such a manner that it is ap-

parent that the predominant appeal of the material is portrayal of violence for violence's sake.

(h) *Knowingly*. "Knowingly" means having general knowledge or [sic], or reason to know, or a belief or ground for belief which warrants further inspection or inquiry or both:

(1) The character and content of any material described herein which is reasonably susceptible of of [sic] examination by the defendant, and

(2) The age of the minor, provided however, that an honest mistake shall constitute an excuse from liability hereunder if the defendant made a reasonable bona fide attempt to ascertain the true age of such minor.

Violation of sections 22–23.2 through 22–23.4 shall be a misdemeanor punishable by a fine not to exceed fifty dollars ($50.00), or confinement for a period of time not to exceed thirty (30) days, or both, in the discretion of the court. (Ord. No. 237, § II, 8–6–68; Res. of 8–6–68; Ord. No. 935, § 1, 4–27–71; Ord. No. 1047, § 1, 10–12–71; Ord. No. 1924, § 1, 1–8–74)

Sec. 22–23.2. Same—Disseminating obscene material to juveniles.

A person is guilty of disseminating obscene material to juveniles when:

(a) With knowledge of its character and content, he sells or loans to a juvenile for monetary consideration;

(1) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, excess violence, or sado-masochistic abuse and which is obscene to juveniles; or

(2) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any material enumerated in paragraph (1) hereof, or explicit and detailed verbal descriptions or narrative accounts of sexual excitements, sexual conduct, excess violence or sado-masochistic abuse and which, taken as a whole, is obscene to juveniles; or

(b) Knowing the character and content of a motion picture show or other presentation which, in whole or in part, depicts nudity, sexual excitement, excess violence or sado-masochistic abuse, and which is obscene to juveniles, he:

(1) Exhibits such motion picture, show or other presentation to a juvenile for a monetary consideration; or

(2) Sells to a juvenile an admission ticket or pass to premises whereon there is exhibited or to be exhibited such motion picture, show or other presentation; or

(3) Admits a juvenile for a monetary consideration to premises whereon there is exhibited or to be exhibited such motion picture, show or other presentation.

(4) Provided that such person shall not be guilty of disseminating obscene material to juveniles within the meaning of the foregoing section 22–23.2(b) if the juvenile is accompanied by his or her parent, guardian or spouse, eighteen (18) years old or over. (Ord. No. 237, § I, 8–6–68; Res. of 8–6–68; Ord. No. 695, § 1, 5–5–70; Ord. No. 1924, § 1, 1–8–74)

Sec. 31–11.1. Board of review created; composition, appointment, compensation and term of members; vacancies.

There is hereby created a board to be known as the "Memphis Board of Review" which shall be composed of a chairman and fifteen (15) other members to be recommended by the mayor and appointed by the council of the City of

Memphis. Members shall serve without pay and their terms of office shall coincide with the term of office of the appointing city council. If a vacancy occurs on the board, a new member to fill such vacancy for the unexpired term shall be recommended by the mayor and appointed by the council. (Ord. No. 669, § 1, 3–31–70; Ord. No. 1112, § 1, 11–2–71)

Sec. 31–11.2. Qualifications of board members; action to be by majority vote.

Such members of the board shall be citizens of Shelby County and shall be chosen as far as reasonably practical in such manner that will represent a cross section of the community and all actions of the board shall be by a majority vote of the board. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–11.3. Board secretary, other clerical help.

The board shall employ a secretary and it may employ other necessary clerical help, with the approval of the director of public service. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–11.4. Authority of board to make rules and regulations.

The board of review is empowered to make such rules and regulations, not inconsistent with the state law and provisions of sections 31–11.1 through 31–11.15 as may be necessary and proper for the internal operation of the board in the performance of its duties. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–11.5. Authority of board to call upon police force for assistance.

The members of the board of review and the secretary employed by the board shall have full authority to call upon the police force for assistance in the enforcement of the provisions of this chapter or any other ordinance of the city. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–11.6. Purchases by board of review.

The board of review is authorized to purchase all necessary stationery, printing, and supplies through the purchasing agent of the city. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–11.7. Expenses of board; statement of expenditures and estimate of operating cost.

All expenses of the board of review shall be paid out of the general funds of the city pursuant to an annual appropriation, by ordinance and it shall be the duty of the board to prepare and submit to the director of public service a statement of its expenditures for the previous year and an estimate of its current year's operating costs. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–12. Authority of board to bring suits for injunction to prevent dissemination of obscene material to juveniles.

The Memphis Board of Review is hereby vested with the power to bring suits for injunction to forbid the presentation to juveniles under eighteen (18) years of age, unaccompanied by parent, guardian or spouse, eighteen (18) years old or over, of any motion picture obscene to juveniles as defined in the Memphis City Code, sections 22–23.1 through 22–23.4. Said action shall be in accordance with the procedures set forth in T.C.A. 39–3005 requiring a prompt final judicial determination. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–13. Application for injunction; notice to theater owner; conferences between board and exhibitor.

Whenever the board has probable cause to believe that any exhibitor of motion pictures is exhibiting to juveniles or proposes to exhibit to juveniles a motion picture obscene to juveniles as defined by the Memphis City Code, sections 22–23.1 through 22–23.4, the board shall have the duty to make application to a court of competent jurisdiction for an injunction restraining the commission of such act. On any application for a temporary injunction, the board of review shall give notice to the theatre

owner of its intention to apply for an injunction. An exhibitor means any person, firm or corporation which exhibits a motion picture film in a commercial motion picture theatre. Nothing in sections 31–11.1 through 31–15 shall prevent voluntary conferences between the board of review and exhibitor concerning the exhibition of any motion picture film. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–14. Dissemination of obscene material to juveniles deemed misdemeanor.

The dissemination to juveniles under eighteen (18) years of age of any motion picture, photograph, drawing, sculpture or similar visual representation, or of any book, pamphlet, magazine or other printed or reproduced matter, or any sound recording, which is obscene to juveniles as that term is defined in the Memphis City Code, sections 22–23.1 through 22–23.4 shall constitute a misdemeanor and be punishable as such. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–14.1. Duty of board to investigate complaints; reports of investigations.

The board of review shall as part of its duties investigate complaints of dissemination of any of the material specified above which may be obscene to juveniles and shall report the results of its investigations to the police department, or attorney general, as it deems appropriate. (Ord. No. 669, § 1, 3–31–70)

Sec. 31–15. Liability of board members.

All actions taken by said board or by any member thereof acting in his capacity as such under the provisions of sections 31–11.1 through 31–15 and all legal or equitable proceedings initiated or participated in by said board or any member thereof in his capacity as such under the provisions of said sections shall be deemed and treated for all purposes as acts of the City of Memphis, and not as acts of such members individually; and the City of Memphis shall fully indemnify any member of said board against any liability for damages whatsoever, and against any costs and expenses incurred in the defense of any claims or action for damages, where such claim or liability arises out of any action of said board or of any member thereof acting in his capacity as such under the provisions of sections 31–11.1 through 31–15. (Ord. No. 669, § 1, 3–31–70)