DAVIS–KIDD BOOKSELLERS, INC.; R.M. Mills Bookstore, Inc.; Austin Periodical Services, Inc.; American Booksellers Association, Inc.; Association of American Publishers; Council for Periodical Distributors Associations; International Periodical Distributors Association, Inc.; National Association of College Stores, Inc.; the Freedom to Read Foundation; Tennessee Library Association; and East Tennessee Library Association, Plaintiffs–Appellants/Cross–Appellees,

v.

Ned Ray McWHERTER, in his capacity as Governor of the State of Tennessee; Charles W. Burson, in his capacity as Attorney General of the State of Tennessee; Victor S. Johnson, III, in his capacity as the District Attorney for Davidson County, Tennessee; and Robert Kirchner, in his capacity as Chief of Police, Metropolitan Police Department for Nashville and Davidson County, Defendants–Appellees/Cross–Appellants.

Supreme Court of Tennessee,
at Nashville.

Nov. 8, 1993.

522

Michael A. Bamberger, Jacqueline S. Glassman, Sonnenschein Nath & Rosenthal, New York City, F. Clay Bailey, Jr., Dearborn & Ewing, Barry Friedman, Vanderbilt University School of Law, Nashville, for plaintiffs-appellants.

Charles W. Burson, Atty. Gen. & Reporter, John B. Nisbet, III, Asst. Atty. Gen., Nashville, Jerry L. Smith, Deputy Atty. Gen., for defendants-appellees.

## OPINION

ANDERSON, Justice.

In this case, we are asked to determine a conflict between a citizen's constitutional right—freedom of speech—and the State's right to protect minors from harm.

The principal issue before us is whether a Tennessee statute regulating the display of materials deemed "harmful to minors" is facially unconstitutional under the United States and Tennessee Constitutions.

The plaintiffs—booksellers, publishers, and others—argue that the Tennessee display statute is unconstitutional because it unnecessarily impedes the access of adults and older minors to materials which are protected by the freedom of speech clauses of the United States and Tennessee Constitutions. The Chancellor upheld the constitutionality of the challenged statutes, including a companion nuisance statute, after holding the meaning of the term "excess violence," was unconstitutionally vague and declaring it elided from the statutes.

We have determined that the display statute is readily susceptible to a narrowing construction which makes it only applicable to those materials which lack serious literary, artistic, political, or scientific value for a reasonable 17–year–old minor. Such a construction significantly reduces the scope of materials covered and produces only a minimal burden on adult access to constitutionally protected expression. The statute as construed is, therefore, not overbroad and fully complies with the First Amendment of the United States Constitution and Article I, § 19 of the Tennessee Constitution.

We have also determined that the nuisance statute allows seizure of materials "harmful to minors" only if such materials are also obscene, and that such seizures are valid only if accomplished in accordance with the applicable statutory procedural safeguards.

Finally, we agree with the Chancellor that the term "excess violence" is unconstitutionally vague because it does not provide notice to potential violators of the materials affected or guidance to the officials charged with its enforcement. We also agree with the Chancellor's application of the doctrine of elision which, after elimination of the vague term, has the effect of upholding the challenged statutes.

We, therefore, affirm the result reached by the Chancellor on the separate grounds stated.

## BACKGROUND

Effective May 4, 1990, the Tennessee legislature made it a criminal offense for "a person to *display* for sale or rental a visual depiction, including a video cassette tape or film, or a written representation, including a book, magazine, or pamphlet, which contains material *harmful to minors* anywhere minors are lawfully admitted." Tenn.Code Ann. § 39–17–914(a) (1991) (emphasis added)[1].

The term "harmful to minors" is defined to mean:

(6) ... that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, *excess violence* or sadomasochistic abuse when the matter or performance:

(A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;

(B) Is patently offensive to prevailing standards in the adult community as a

1. The full text of the relevant statutory provisions is set forth in the Appendix to this Opinion.

whole with respect to what is suitable for minors; and

(C) Taken as whole lacks serious literary, artistic, political or scientific values for minors.

Tenn.Code Ann. § 39–17–901(6) (1991) (emphasis added).

The term "excess violence" is defined as:
... the depiction of acts of violence in such a graphic and/or bloody manner as to exceed common limits of custom and candor, or in such a manner that it is apparent that the predominant appeal of the material is portrayal of violence for violence's sake.

Tenn.Code Ann. § 39–17–901(4) (1991).

Shortly after the display statute became law, the plaintiffs, who are booksellers, wholesale book distributors, publishing trade associations, and library associations, brought this action for injunctive and declaratory relief under 42 U.S.C. § 1983, asserting that the identified statutes are facially unconstitutional under both the federal and state constitutions.

The plaintiffs' complaint first attacked the display statute as overbroad on the grounds that it impermissibly restricts the right of access of adults and older minors to materials which are not obscene and are constitutionally protected under Article I, § 19 of the Tennessee Constitution, and the First and Fourteenth Amendments to the U.S. Constitution. Second, the plaintiffs charged that as amended, the nuisance statute constitutes a prior restraint because it allows for immediate seizure of materials deemed harmful to minors without a prior judicial determination that the works carried or sold are legally obscene. Third, the plaintiffs asserted that the statute as a whole, and particularly the term "excess violence," is unconstitutionally vague in violation of the Fifth and Fourteenth Amendments of the United States Constitution because it fails to provide notice as to what constitutes a criminal offense. Finally, the plaintiffs claimed that defining community to mean the judicial district in

which a violation is alleged to have occurred, imposes an unconstitutional burden on interstate commerce in violation of Article I, § 8 of the United States Constitution because businesses are required to comply with the standards of thirty-one different judicial districts.

After an evidentiary hearing, the Chancellor rejected the plaintiffs' principal contention that the display statute was overbroad and unconstitutional, but agreed that "the definition of 'excess violence' in T.C.A. § 39–17–901(4), and as 'excess violence' is used in T.C.A. § 39–17–911 is unconstitutional for vagueness...." Enforcement of the unconstitutional provisions was enjoined.[2] The Chancellor, however, applied the doctrine of elision and upheld the remaining portions of the challenged statutes. Both the plaintiffs and the State have appealed the Chancellor's ruling presenting for our review the four issues outlined above.

### OVERBREADTH ANALYSIS

The plaintiffs assert that the display statute is overbroad and facially invalid under the First Amendment of the United States Constitution and Article I, § 19 of the Tennessee Constitution, claiming that it sweeps within its coverage materials which are not obscene and are protected expression as to adults and older minors.

The First Amendment provides in pertinent part that "Congress shall make no law ... abridging the freedom of speech or of the press," and is applicable to the States through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The portion of Article I, § 19 that is pertinent to this appeal provides that "[t]he free communication of thoughts and opinions is one of the invaluable rights of man and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

---

**2.** Specifically, the Chancellor enjoined enforcement of those portions of Tenn.Code Ann. §§ 39–17–911 and 914 which prohibit the sale, loan, exhibition or display for sale or rental of material to minors which contain "excess violence" as that term is defined in Tenn.Code Ann. § 39–17–901(4) (1991).

We begin our analysis with the familiar principle of First Amendment jurisprudence that:

> the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem.

*Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 767, 86 L.Ed. 1031 (1942) (citations omitted). The traditional categories of speech subject to permissible government regulation include "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.*, 315 U.S. at 572, 62 S.Ct. at 769. Likewise, this Court has declined to interpret Article I, § 19 as granting absolute protection to speech and press. *Leech v. American Booksellers Ass'n, Inc.*, 582 S.W.2d 738, 745 (Tenn.1979).

■ Accordingly, obscene materials are not protected by the First Amendment to the Constitution of the United States or by Article I, § 19 of the Tennessee Constitution. *See, Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *State v. Marshall*, 859 S.W.2d 289 (Tenn.1993). Under the three-pronged test announced in *Miller*, the "basic guidelines" for determining whether a particular book, motion picture or other material is obscene are:

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

*Miller*, 413 U.S. at 24, 93 S.Ct. at 2614.

In addressing the issue of the proper standard to be used in determining what is obscene as to minors, the U.S. Supreme Court held, in *Ginsberg v. New York*,[3] that a state may constitutionally employ a variable obscenity standard which restricts the rights of minors to obtain certain sexually related materials that are not obscene as to adults. At issue was the constitutionality of a New York statute prohibiting the sale to persons under the age of 17 of materials within the statutory definition of "harmful to juveniles." In upholding the constitutionality of the statute, the Court identified two compelling interests justifying the restrictions imposed by the statute: one, the interest of parents in rearing their children, and two, the state's independent interest in the well-being of its youth. *Id.*, 390 U.S. at 639–40, 88 S.Ct. at 1280–81.

The type of regulation of sexually explicit materials permitted under *Ginsberg* is not, however, without limitations because "minors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212–13, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975) (citations omitted).

The Supreme Court summarized the legitimate reach of a state's authority under the First and Fourteenth Amendments of the U.S. Constitution to protect minors from obscenity in reviewing a regulation which banned indecent as well as obscene interstate commercial telephone messages, commonly known as "dial-a-porn." *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).

> Sexual expression which is indecent but not obscene is protected by the First Amendment.... The government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards.

**3.** 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

The government may serve this legitimate interest, but to withstand constitutional scrutiny, it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. It is not enough to show that the government's ends are compelling; the means must be carefully tailored to achieve those ends.

*Id.,* 492 U.S. at 126–27, 109 S.Ct. at 2836 (citations omitted).

■ As this Court observed in *Leech, supra* (in the context of determining whether obscenity was entitled to greater protection under the State Constitution than the Federal Constitution), we may interpret Article I, § 19 of the State Constitution as providing greater freedom of expression than that provided in the Federal Constitution. *Id.,* 582 S.W.2d at 745. Although this Court has not previously considered the scope of the State's authority under the Tennessee Constitution to regulate materials obscene as to minors, but protected as to adults, we conclude that Article I, § 19 does not prohibit such regulations, and in the context of this case, is coextensive with the scope of the First Amendment to the U.S. Constitution. We emphasize, however, as we did in *Marshall* that:

This holding does not mean that our interpretation of the protection granted to "free communication of thoughts and opinions" in Article I, Section 19 of the Constitution of Tennessee is necessarily identical to the U.S. Supreme Court's interpretation of the rights granted under the First and 14th Amendments to the U.S. Constitution. We reserve our authority as "the court of last resort" in interpreting the Constitution of Tennessee.

*Marshall,* 859 S.W.2d at 294–95.

As in *Leech* and *Marshall,* we find it unnecessary for the resolution of the issues before the Court in this case to further specifically define the boundaries of protection of Article I, § 19 of the Tennessee Constitution regarding freedom of speech and press.

■ In addition to the constitutional restrictions on government regulation of protected speech outlined above, the over-breadth doctrine itself has significant limitations. The rationale behind the overbreadth doctrine in a First Amendment facial challenge is based on the recognition that broad statutory language that seems to directly sweep protected expression within the scope of its regulation, or which indirectly places an undue burden on such protected expression, can deter the legitimate exercise of First Amendment rights. *Erznoznik,* 422 U.S. at 216, 95 S.Ct. at 2276; *American Booksellers v. Webb,* 919 F.2d 1493, 1499 (11th Cir.1990). It is well recognized, however, that "[a] facial challenge to a legislative Act is ... the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exist under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Because of the wide-reaching effects of striking down a statute on its face, the overbreadth doctrine has been characterized as "strong medicine" which should be employed "with hesitation, and then only as a last resort." *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). *See generally* Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844 (1970).

Moreover, when a regulation is not directed at the origin of expression, or at the ultimate right of a person to present or procure protected expression, but regulates instead the manner of presentation or the form of expression, conduct plus speech is involved. *Ferber,* 458 U.S. at 770, 102 S.Ct. at 3361–62.

Statutes regulating the display of materials harmful to minors have consistently been held to affect conduct plus speech. *Webb,* 919 F.2d at 1500; *Upper Midwest Booksellers v. City of Minneapolis,* 780 F.2d 1389, 1391–92 (8th Cir.1985); *M.S. News Co. v. Casado,* 721 F.2d 1281, 1289 (10th Cir.1983); *American Booksellers Ass'n v. Rendell,* 332 Pa.Super. 537, 481 A.2d 919, 941 (1984).

■ When a statute regulating conduct plus speech is at issue, the overbreadth must be "real" and "substantial" in relation to the statute's "plainly legitimate sweep" before

the law should be invalidated on its face, and if an ambiguous term has created a constitutional problem which may be solved by construction, courts have a duty to do so. *Id.* As the U.S. Supreme Court reiterated recently, in relation to the facial challenge brought against the Virginia display statute, courts have a duty to construe a challenged statute narrowly. *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 397, 108 S.Ct. 636, 644–45, 98 L.Ed.2d 782 (1988).

> It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it [the statute] be "readily susceptible" to a narrowing construction that would make it constitutional, it will be upheld. The key to application of this principle is that the statute must be "readily susceptible" to limitation. We will not rewrite a state law to conform it to constitutional requirements. *Id.*

(Citations omitted.) Considering the principles discussed above, we look to the provisions of the Tennessee display statute and to the facts of this case in order to determine whether the statute is susceptible to a narrowing construction and whether such a construction is necessary to make the statute constitutional.

■ The plaintiffs here do not challenge the constitutional authority of a state to regulate materials that are protected as to adults, but obscene as to minors. Instead they contend that the Tennessee display statute is unconstitutional because it unnecessarily impedes the access of adults and older minors to materials which are protected by the First Amendment and Article I, § 19 of the Tennessee Constitution. Under the facts of this case, we must determine whether the State, in serving the compelling interest of protecting minors, has drawn its statute narrowly enough to avoid unnecessarily interfering with free speech rights.

The proof in the trial court focused on the manner in which plaintiff book publishers and booksellers publish and sell books and other expressive material. For example, the evidence showed that the bookseller, Davis–Kidd, operates large general bookstores which sell books, magazines, stationery, toys, and art posters, and that their marketing strategy is to display books and magazines so as to encourage browsing because customers buy more if they browse. Davis–Kidd purchases 95–98 percent of its inventory from a book distributor who chooses the titles of the 2,000 to 3,000 new books the store receives each month. The book distributor alone makes this choice based on very limited information from the book publisher, which typically includes 15–20 seconds spent verbally on each book and the publisher's catalog. Davis–Kidd does, however, control the type of books it stocks. Apparently, no one reads the book except the author and the editor, and no effort is made by either the publisher or distributor to tailor its business according to the obscenity laws or community standards of each state.

Although Davis–Kidd does not review or read each of their books for objectionable content, the co-owner, Thelma Kidd Yarian, testified that many of their books would be inappropriate for younger children because of material that is sexual or violent in nature. Davis–Kidd introduced as trial exhibits a number of books and videos from its inventory it felt might possibly fall within the scope of the statute as being harmful to minors, but which would be protected material as to adults. Assuming that assertion is correct, Davis–Kidd argues that the access of adults would, therefore, be limited to works not obscene as to them and the rights of older minors to read books not harmful to them would be restricted. Yarian also said that compliance would be difficult because the statute does not distinguish between older and younger minors. Expert opinion testimony established, however, that most, if not all, of the books would have literary value for adults and 17–year–old minors. According to the co-owner, the compliance option of blinder racks, accompanied by reasonable steps to prevent perusal by children, would disrupt business practices, and the other options of creating an adults only section or excluding minors were unacceptable.

While the United States Supreme Court has not definitively addressed the constitutionality of a display statute such as the one

at issue here,[4] a number of courts from other jurisdictions have considered similar statutes. In all but one case,[5] statutes substantially similar to the one at issue here have been upheld as constitutionally valid. *See, e.g., American Booksellers v. Webb*, 919 F.2d 1493 (11th Cir.1990); *cert. denied*, — U.S. —, 111 S.Ct. 2237, 114 L.Ed.2d 479 (1991); *American Booksellers Ass'n, Inc. v. Commonwealth of Virginia*, 882 F.2d 125 (4th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990); *Upper Midwest Booksellers v. City of Minneapolis*, 780 F.2d 1389 (8th Cir.1985); *Capitol News Co., Inc. v. Metropolitan Gov't*, 562 S.W.2d 430 (Tenn.1978);[6] *American Booksellers Ass'n, Inc. v. Rendell*, 332 Pa.Super. 537, 481 A.2d 919 (1984).

Many of the courts upholding display ordinances or statutes did so by narrowly interpreting the challenged provisions. For example, the Eleventh Circuit ruled that in determining what was "harmful to minors" under a Georgia display statute, the third prong of the test (whether the material, taken as a whole, has serious literary, artistic, political or scientific value for a minor) must be analyzed by determining whether the material had such value for a reasonable 17-year-old minor. If the material has such serious value for a reasonable 17-year-old minor, then it does not lack value for the entire class of minors; and therefore, does not fall within the display statute. *Webb*, 919 F.2d at 1504–05.

In *American Booksellers v. Virginia, supra*, the Fourth Circuit Court of Appeals found constitutional a statute making it unlawful "to knowingly display for commercial purposes in a manner whereby juveniles may examine and peruse" any material depicting or describing sexually explicit matters "harmful to juveniles." The federal court's decision was based upon a decision of the Virginia Supreme Court in which the Virginia court had narrowly construed the display statute in question. In response to two certified questions from the Supreme Court of the United States[7], the Virginia Supreme Court adopted a construction similar to the *Webb* court, ruling that materials found to have serious literary, artistic, political or scientific value for a legitimate minority of normal, older adolescents are not within the proscriptions of the display statute. Second, the Court ruled that "perusal" goes well beyond casual examination and refers to the opportunity a bookseller affords juveniles to take books off the shelves and read them in the stores. *Commonwealth v. American Booksellers Ass'n, Inc.*, 236 Va. 168, 372 S.E.2d 618, 624 (1988).

Likewise in *Rendell, supra*, the Pennsylvania Superior Court upheld the statute by construing the term "display" narrowly to mean an "ostentatious showing or presentation," and held that general bookstores may lawfully carry materials "harmful to minors" provided that they do not emphasize or advertise the presence of the materials. *Id.*, 481 A.2d at 941.

Finally, the Minneapolis display ordinance at issue in *Upper Midwest Booksellers, supra*, prohibited the display of materials with content "harmful to minors." It was more restrictive than the Tennessee statute challenged by plaintiffs here because the only method of compliance for general bookstores, other than barring minors altogether, was to place materials regulated by the statute in sealed packages. *Id.*, 780 F.2d at 1391. However, the Eighth Circuit upheld the statute, emphasizing that unlike those statutes struck down by the U.S. Supreme Court in *Erznoznik* and *Butler v. Michigan*, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957), a

---

**4.** A statute very similar to the one at issue here was before the U.S. Supreme Court; however, the Court did not decide the merits of the case, but instead certified two questions to the Virginia Supreme Court to allow the state's highest court an opportunity to interpret the statute narrowly thereby avoiding constitutional problems. *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988).

**5.** *Tattered Cover, Inc. v. Tooley*, 696 P.2d 780 (Colo.1985).

**6.** The issue now before this Court—whether the display statute infringes upon the constitutional rights of adults—was not an issue in *Capitol News Co.*

**7.** *See Virginia v. American Booksellers Ass'n, Inc., supra*, at note 4.

display ordinance does not result in the total suppression of the material in question, and it applies only to materials obscene as to minors. *Id.*, 780 F.2d at 1394. The Court concluded that the restriction in relation to adults was merely an "incidental effect of the permissible regulation" and "minimal in its impact" because adults remained free to request a copy of the restricted material to view, or to peruse the material in adults only bookstores, and more significantly, adults were still able to purchase the material and view it in a "free and unfettered fashion." *Id.*, 780 F.2d at 1395.

Several other courts have declared display regulations overbroad and unconstitutional, but those decisions are not persuasive here because the invalid regulations had, in some way, sought to regulate material that was not obscene, even as to minors. *Rushia v. Town of Ashburnham*, 582 F.Supp. 900 (D.Mass. 1983) (town bylaw unconstitutional because it was not limited to materials obscene as to minors); *American Booksellers Ass'n v. McAuliffe*, 533 F.Supp. 50 (N.D.Ga.1981) (statute prohibiting display or sale to minors of material containing nude figures held overbroad because prohibition extends to material not obscene as to minors); *Allied Artists Pictures Corp. v. Alford*, 410 F.Supp. 1348 (W.D.Tenn.1976) (ordinance overbroad because it prohibited exposing juveniles to films containing language that was not obscene as to juveniles); *American Booksellers Ass'n v. Superior Court*, 129 Cal.App.3d 197, 181 Cal.Rptr. 33 (2d Dist.1982) (ordinance overbroad because it required sealing material containing any photo where the primary purpose is sexual arousal regardless of whether obscene as to minors); *Calderon v. City of Buffalo*, 61 A.D.2d 323, 402 N.Y.S.2d 685 (1978) (ordinance overbroad because it prohibited sale and exhibition to juveniles of material that was not obscene as to juveniles); *Oregon v. Frink*, 60 Or.App. 209, 653 P.2d 553 (1982) (statute prohibiting dissemination of all nudity to minors overbroad because it does not limit prohibition to material that is obscene as to juveniles).

We are persuaded that the better-reasoned approach to this constitutional dilemma is the narrow statutory interpretation adopted by the Eleventh Circuit and most other courts which have considered the problem. The Tennessee statute, because of its ambiguity, is readily susceptible to the narrowing construction advanced by the State and adopted by other courts considering similar statutes. Accordingly, we hold that the display statute applies only to those materials which lack serious literary, artistic, political, or scientific value for a reasonable 17–year–old minor. The proof in this record is that most (if not all) of the books submitted by the plaintiffs as materials possibly affected by the statute would have serious value, either literary or otherwise, for older minors. Thus, it is clear that the statute, as interpreted, does not reduce older minors to reading only material fit for children.

■ Moreover, compliance does not impose an impermissible burden on merchants subject to its provisions. As a result of our narrow construction, the amount of materials affected is minimal, and the statute specifies a variety of methods of compliance allowing booksellers to choose the least burdensome means. More significantly, the statute does not require that booksellers read every book in stock. Although the statute contains no explicit knowledge requirement, Tenn.Code Ann. § 39–11–301(c) (1991), supplies that requirement by providing that where the definition of an offense does not plainly dispense with a mental element, "intent, knowledge, or recklessness suffices to establish the culpable mental state."

In the context of criminal statutes regulating obscenity, the State must establish that the defendant had knowledge of the contents and character of the materials displayed or sold. *New York v. Ferber*, 458 U.S. 747, 765–66, 102 S.Ct. 3348, 3358–59, 73 L.Ed.2d 1113 (1982); *Hamling v. United States*, 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974); *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). The danger of attempting to regulate expression without a requirement that an affected merchant bookseller have knowledge is that it imposes severe limitations on the public's access to constitutionally protected matter and a severe burden on booksellers who will tend to restrict the books sold to those reviewed.

The practical limitations as to the amount of material a bookseller can review, combined with the self-censorship inherent in the face of strict criminal liability, would tend to restrict public access to protected materials. *Smith*, 361 U.S. at 153–54, 80 S.Ct. at 218–19. Under the display statute here at issue, the State must prove that the bookseller had knowledge of the contents and character of the material displayed or sold to establish a violation.

█ Finally, adults are not completely denied access to the minimal amount of materials subject to the provisions of the statute. There are several compliance methods specified within the statute, all of which allow adults an opportunity to peruse the covered materials prior to purchase. Moreover, as discussed above, the statute does not impose strict liability, so it is unlikely that booksellers will engage in self-censorship and thereby impermissibly impinge upon public access to protected materials. Accordingly, any burden imposed on the access rights of adults to protected materials is minimal and incidental.

Because we conclude the statute as interpreted does not impermissibly restrict the access of adults or older minors to protected expression under either the U.S. or Tennessee Constitutions, the decision of the Chancellor overruling the plaintiffs' overbreadth challenge is affirmed.

## PRIOR RESTRAINT

█ The plaintiffs next contend that the 1990 amendment to the nuisance statute violates the Tennessee and United States Constitutions by allowing immediate seizure and the ultimate forfeiture of non-obscene, constitutionally protected materials, and that by so doing, it imposes a prior restraint.

The 1990 amendment to Tenn.Code Ann. § 29–3–101 includes within the definition of "nuisance" "any place in or upon which any sale, exhibition or possession of any material determined to be obscene or pornographic with intent to exhibit, sell, deliver or distribute matter or materials in violation of §§ 39–17–901—39–17–908, § 39–17–911, *§ 39–17–914* [display statute], § 39–17–918 ..."

Tenn.Code Ann. § 29–3–101(a)(2) (Supp. 1992) (emphasis added). All furnishings, fixtures, equipment, moneys and stock, used in or in connection with the maintenance or conduct of a nuisance are subject to immediate seizure upon detection by any law enforcement officer, and may be forfeited to the state by court order in an action for abatement. However, immediate seizure is not authorized for the possession of "obscene matter." Tenn.Code Ann. § 29–3–101(c) (1980 & Supp.1992). Seizures for the possession of obscene matter are authorized only after a judicial determination of probable cause that the obscenity laws are being violated, and issuance of a search warrant. *Id.;* see also Tenn.Code Ann. § 39–17–903(a) (1991).

The plaintiffs first argue that because the definition of nuisance includes places where violations of the display statute, Tenn.Code Ann. § 39–17–914, occur, materials "harmful to minors" are subject to seizure. Second, the plaintiffs contend that the nuisance statute permits the immediate seizure of materials "harmful to minors" because the statute provides pre-seizure procedural safeguards only for "possession of obscene matter," and materials that are "harmful to minors" may not be obscene as to adults. By allowing immediate seizure of protected materials, the plaintiffs assert that the statute is unconstitutional under the state and federal constitutions as a prior restraint and as a violation of the free speech rights of adults. *See Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989); *Sable Communications of California Inc.*, 492 U.S. at 126–27, 109 S.Ct. at 2836.

█ In construing statutes, it is our duty to adopt a construction which will sustain a statute and avoid constitutional conflict if any reasonable construction exists that satisfies the requirements of the Constitution. *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993); *State v. Lyons*, 802 S.W.2d 590, 592 (Tenn.1990); *Shelby County Election Comm'n v. Turner*, 755 S.W.2d 774, 777 (Tenn.1988); *Kirk v. State*, 126 Tenn. 7, 10, 150 S.W. 83, 84 (1911). When faced with a choice between two constructions, one of which will sustain the validity of the statute

and avoid a conflict with the Constitution, and another which renders the statute unconstitutional, we must choose the former. *Id.*

It is correct, as the plaintiffs point out, that seizure of obscene materials is constitutional only if certain procedural safeguards are followed. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). Moreover, as the plaintiffs assert, seizure of protected materials would impose great burdens on the free speech rights of adults and raise grave constitutional questions. *See Fort Wayne Books, Inc*, 489 U.S. at 63–65, 109 S.Ct. at 927–28; *Sable Communications of California Inc.*, 492 U.S. at 126–27, 109 S.Ct. at 2836. However, we conclude that an entirely reasonable construction of the amended nuisance statute is that it allows seizures of materials "harmful to minors" only if those materials are also "obscene matter." Seizures of such material must be conducted in accordance with the statutory procedural safeguards discussed above. This construction avoids constitutional conflict and safeguards free speech rights. Accordingly, the Chancellor's decision overruling the plaintiffs challenge to the nuisance statute is affirmed on the separate grounds stated.

### COMMERCE CLAUSE VIOLATION

■ The final issue raised by the plaintiffs is that the statute, which creates thirty-one separate community standards, violates Article I, § 8 of the United States Constitution by requiring businesses to tailor distribution of books in Tennessee to meet the differing standards, thereby imposing an enormous burden on interstate commerce.

■ Article I, Section 8 of the United States Constitution grants to Congress the power to regulate commerce "among the several states." The Supreme Court has interpreted the Commerce Clause as a limitation on the power of state governments. However, states are not precluded from enacting legislation which has an impact on interstate commerce if the state law regulates evenhandedly to effectuate a legitimate local public interest and its effects on interstate commerce are only incidental, and the burden imposed on interstate commerce is not clearly excessive in relation to the local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Applying those standards to this case, the plaintiffs' Commerce Clause challenge is without merit, both factually and legally. As a factual matter, the record demonstrates that the book distributors and publishers do not consider differing community standards in the operation of their businesses. From a legal standpoint, the U.S. Supreme Court has declined to require a national community and allowed states wide latitude in defining the term "community." *See Miller*, 413 U.S. at 31–34, 93 S.Ct. at 2618–20. For example, in *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), the Court indicated that states may define the term "community" as the area from which the jury pool was selected, implicitly approving of geographical definitions. *Id.*, 431 U.S. at 303, 97 S.Ct. at 1765. Later, the Court observed that "regulations which restrict access by minors to material obscene as to minors must also be classified as having only an incidental effect on commerce." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127, 98 S.Ct. 2207, 2215, 57 L.Ed.2d 91 (1978).

Moreover, the three cases cited by the plaintiffs in support of the Commerce Clause challenge are inapposite. In all of those cases the Court found that there was a discriminatory purpose behind the challenged law, or that the purported local benefits of the statute were illusory. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981); *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Nothing in this record indicates that the obscenity statutes here under attack were motivated by a desire to discriminate against interstate commerce, or that the local benefit of the statutes, the protection of minors, is illusory. Accordingly, the Chancellor's decision overruling the plaintiffs' Commerce Clause challenge is affirmed.

### VAGUENESS

█ The final issue we address is the State's contention that the Chancellor erred in finding the term "excess violence" unconstitutionally void for vagueness.

Specifically, the Chancellor found that "the definition of 'excess violence' in T.C.A. § 39–17–901(4), and as 'excess violence' is used in T.C.A. § 39–17–911 is unconstitutional for vagueness because the term is so unclear that no fair warning, guidance, or notice of the conduct prohibited are provided those persons or entities who trade in printed and visual materials and are obligated to comply with the section."

On appeal, the State argues that the term "excess violence" is not unconstitutionally vague because first, the plain meaning of the words used in the statute specifically delineates the prohibited conduct; second, the term is sufficiently defined; third, the term is sufficiently narrowed by the context in which it is used; and finally, that the State has a compelling interest in protecting minors from "excessively violent material."

The plaintiffs respond that the definition of excess violence is inherently and unconstitutionally vague, and that it violates the principle established by this Court that a statute so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, must be declared void for vagueness. *See Leech*, 582 S.W.2d at 746. Applying that standard, the plaintiffs contend that "excess violence" is defined by using phrases which add nothing to the meaning of the term and that the definition ends with the circular phrase of "violence for violence's sake." No guidance, therefore, is provided to those who trade in printed and visual material as to how to apply those undefined terms. Finally, the plaintiffs argue that even if excess violence could be defined in a manner that met constitutional requirements of clarity, it is an unconstitutional basis for regulation because it is protected speech. As a result, every court that has considered the issue has invalidated attempts to regulate materials solely based on violent content, regardless of whether that material is called violence, excess violence, or included within the definition of obscenity.

We begin with the Supreme Court's observation that "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

The *Grayned* court went further and articulated the reasons that vague laws are unconstitutional:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked.

*Grayned*, 408 U.S. at 108–109, 92 S.Ct. at 2298 (citations omitted).

In the context of First Amendment cases, the Supreme Court has imposed a more stringent rule which requires that statutes that impinge on the area of freedom of expression must have a greater degree of specificity than in other contexts, so as to insure that citizens will not be "chilled" from exercising their constitutional right to free expression. *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

And where conduct is implicated, the standard is even more strict:

Because of the need for greater clarity when a statute restricts conduct closely associated with expression, the Supreme Court has established special standards for determining vagueness. In *Miller v. California*, the Supreme Court required that statutes restricting "obscene" material "specifically define" the forms of sexual conduct restricted. *Miller v. California*, 413 U.S. at 27, 93 S.Ct. at 2607.

*Sovereign News Co. v. Falke*, 448 F.Supp. 306, 406 (N.D.Ohio 1977).

The standard normally used in determining if a statute is vague, is whether "men of common intelligence must necessarily guess at its meaning." *See, e.g., Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973); *Leech*, 582 S.W.2d at 746. If a statute is to avoid unconstitutional vagueness, it must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted).

Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, the Supreme Court has recognized that the more important aspect of the vagueness doctrine is not actual notice, but the other principle element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. *See Smith v. Goguen*, 415 U.S. at 574, 94 S.Ct. at 1247–1248.

As Justice O'Connor observed in *Kolender*: Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

*Id.*, 461 U.S. at 358, 103 S.Ct. at 1858 (quoting *Smith v. Goguen*, 415 U.S. at 575, 94 S.Ct. at 1248).

In this case, the term "excess violence" is defined as "the depiction of acts of violence in such a graphic and/or bloody manner as to exceed common limits of custom and candor, or in such a manner that it is apparent that the predominant appeal of the material is portrayal of violence for violence's sake." Tenn.Code Ann. § 39–17–901(4) (1991). We note that this exact same definition was held void for vagueness in *Allied Artists Pictures Corp. v. Alford*, 410 F.Supp. 1348 (W.D.Tenn. 1976). Although, we are not bound by that determination, we agree with the federal district court that the definition of the term makes the decision of what constitutes "excess violence" an entirely subjective one. It gives little, if any, objective guidance to booksellers or officials charged with enforcement. Accordingly, it neither gives notice to ordinary people of what materials are affected, nor sufficient guidance to law enforcement officials to prevent arbitrary law enforcement. *See also Video Software Dealers Ass'n v. Webster*, 773 F.Supp. 1275, 1280 (W.D.Mo.1991), *aff'd* 968 F.2d 684 (8th Cir. 1992) (finding unconstitutional a statute which included violent material within the definition of obscenity). Moreover, the vagueness is not cured by incorporating violence in the definition of obscenity as to minors. Indeed, the U.S. Supreme Court has "confine[d] the permissible scope of such regulation [state statutes designed to regulate obscene materials] to works which depict or describe sexual conduct." *Miller, supra*, 413 U.S. at 24, 93 S.Ct. at 2614–15. The obscenity definition is specifically designed for sexually explicit materials not violent materials.

Apart from our conclusion that the term "excess violence," as used in the statute, is void for vagueness under Article I, § 19 of the Tennessee Constitution, we do not deem it necessary in this case to further define the boundaries of freedom of expression under the Tennessee Constitution. We prefer, as the court of last resort, to interpret Article I, § 19 of the Tennessee Constitution on a case by case basis as issues arise. We, therefore, affirm the Chancellor's decision declaring the term "excess violence" void for vagueness.

## CONCLUSION

Based on the foregoing analysis, we conclude that the display statute, Tenn.Code

Ann. § 39–17–914, is not unconstitutionally overbroad with the limiting construction applied, because it proscribes only the knowing display of materials which, taken as a whole, lack serious literary, artistic, political or scientific value for a reasonable seventeen year old minor, and as such, imposes only an incidental burden on the rights of booksellers and adults. Moreover, we hold that the nuisance statute allows seizure of materials "harmful to minors" only if such materials are also obscene, and such seizures are valid only if accomplished in accordance with the applicable statutory procedural safeguards. Finally, we conclude that the term "excess violence" is void for vagueness because it does not provide notice to potential violators of the materials affected, or guidance to the officials charged with its enforcement. We, however, apply the doctrine of elision, eliminating that term from and upholding the challenged statutes.

Accordingly, the judgment of the Chancellor is affirmed. Costs of this appeal are taxed one-half to the plaintiffs and one-half to the State of Tennessee.

DROWOTA and DAUGHTREY, JJ., and LEWIS, Special Justice, concur.

REID, C.J., concurs with separate opinion.

### APPENDIX

*Note:* 1990 Amendment language has been underlined.

**29–3–101. Definitions—Maintenance and abatement of nuisance—Forfeiture of property—Payment of moneys from forfeiture into general funds.**—(a) As used herein:

(1) "Lewdness" includes all matter of lewd sexual conduct or live exhibition, and includes, but is not limited to, possession, sale or exhibition of any:

(A) Obscene films or plate positives;

(B) Films designed to be projected upon a screen for exhibition; or

(C) Films or slides, either in negative or positive form, designed for projection on a screen for exhibition;

(2) "Nuisance" means that which is declared to be such by other statutes, and in addition thereto means any place in or upon which lewdness, assignation, prostitution, unlawful sale of intoxicating liquors, unlawful sale of any regulated legend drug, narcotic or other controlled substance, unlawful gambling, any sale, exhibition or possession of any material determined to be obscene or pornographic with intent to exhibit, sell, deliver or distribute matter or materials in violation of §§ 39–17–901— 39–17–908, § 39–17–911, § 39–17–914, § 39–17–918, or §§ 39–17–1003—39–17– 1005, quarreling, drunkenness, fighting or breaches of the peace are carried on or permitted, and personal property, contents, furniture, fixtures, equipment and stock used in or in connection with the conducting and maintaining any such place for any such purpose;

(3) "Person" means and includes any individual, corporation, association, partnership, trustee, lessee, agent or assignee; and

(4) "Place" means and includes any building, room enclosure or vehicle, or separate part or portion thereof or the ground itself;

(b) Any person who uses, occupies, establishes or conducts a nuisance, or aids or abets therein, and the owner, agent or lessee of any interest in any such nuisance together with the persons employed in or in control of any such nuisance by any such owner, agent or lessee is guilty of maintaining a nuisance and such nuisance shall be abated as provided hereinafter.

(c) All furnishings, fixtures, equipment, moneys and stock, used in or in connection with the maintaining or conducting of a nuisance, are subject to seizure, immediately upon detection by any law enforcement officer and are subject to forfeiture to the state by order of a court having jurisdiction upon application by any of the officers or persons authorized by § 29–3– 102, to bring action for the abatement of such nuisance; provided, that seizure for the possession of obscene matter shall be in accordance with §§ 39–17–901—39–17– 908 and seizure for violations of §§ 39–17– 1003—39–17–1005 shall be in accordance with §§ 39–17–1006 and 39–17–1007. Any

property so forfeited shall be disposed of by public auction or as otherwise provided by law.

(d) All moneys from such forfeiture and all proceeds realized from the enforcement of this section shall be paid equally into the general funds of the state and the general funds of the political subdivision or other public agency, if any, whose officers made the seizure, except as otherwise provided by law. [Acts 1913 (2nd E.S.), ch. 2, § 1; Shan., § 5164a1; Code 1932, § 9324; Acts 1943, ch. 118, § 1; C.Supp. 1950, § 9324; Acts 1973, ch. 277, §§ 1–4; T.C.A. (orig. ed.), § 23–301; Acts 1990, ch. 1092, § 8.]

**39–17–901. Definitions.**—The following definitions apply in this part, unless the context requires otherwise:

(1) "Actual or constructive knowledge": a person is deemed to have constructive knowledge of the contents of material who has knowledge of facts which would put a reasonable and prudent person on notice as to the suspect nature of the material;

(2) "Community" means the judicial district, as defined in § 16–2–506, in which a violation is alleged to have occurred;

(3) "Distribute" means to transfer possession of, whether with or without consideration;

(4) "Excess violence" means the depiction of acts of violence in such a graphic and/or bloody manner as to exceed common limits of custom and candor, or in such a manner that it is apparent that the predominant appeal of the material is portrayal of violence for violence's sake;

(5) "Final judgment" or "conviction" means all direct appeals have been exhausted including an application for appeal or for certiorari to the Tennessee or United States supreme court;

(6) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance;

(A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;

(B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(C) Taken as whole lacks serious literary, artistic, political or scientific values for minors;

(7) "Matter" means any book, magazine, newspaper or other printed or written material or any picture, drawing, photograph, motion picture film, videocassette or other pictorial representation, or any statue, figure, device, theatrical production or electrical reproduction, or any other article, equipment, machine or material that is obscene as defined by §§ 39–17–901—39–17–917;

(8) "Minor" means any person who has not reached eighteen (18) years of age and is not emancipated;

(9) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state;

(10) "Obscene" means:

(A) The average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

(B) The average person applying contemporary community standards would find that the work depicts or describes, in a patently offensive way, sexual conduct; and

(C) The work, taken as a whole, lacks serious literary, artistic, political, or scientific value;

(11) "Patently offensive" means that which goes substantially beyond customary limits of candor in describing or representing such matters;

(12) "Prurient interest" means a shameful or morbid interest in sex;

(13) "Sadomasochistic abuse" means flagellation or torture or physical restraint by or upon a person for the purpose of sexual gratification of either person;

(14) "Sexual conduct" means:

(A) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated. A sexual act is simulated when it depicts explicit sexual activity which gives the appearance of ultimate sexual acts, anal, oral or genital. "Ultimate sexual acts" means sexual intercourse, anal or otherwise, fellatio, cunnilingus or sodomy; or

(B) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals; and

(15) "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal. [Acts 1989, ch. 591, § 1; 1990, ch. 1092, §§ 1–3.]

**39–17–911. Sale, loan or exhibition of material to minors.**—(a) It is unlawful for any person to knowingly sell or loan for monetary consideration or otherwise exhibit or make available to a minor:

(1) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body, which depicts nudity, sexual conduct, excess violence, or sado-masochistic abuse, and which is harmful to minors; or

(2) Any book, pamphlet, magazine, printed matter, however reproduced, or sound recording, which contains any matter enumerated in subdivision (a)(1), or which contains explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, excess violence, or sado-masochistic abuse, and which is harmful to minors.

(b) It is unlawful for any person to knowingly exhibit to a minor for monetary consideration, or to knowingly sell to a minor an admission ticket or pass or otherwise admit a minor to premises whereon there is exhibited a motion picture, show or other presentation which, in whole or in part, depicts nudity, sexual conduct, excess violence, or sado-masochistic abuse, and which is harmful to minors.

(c) A violation of this section is a Class A misdemeanor.

(d) It is an affirmative defense to prosecution under this section that the minor to whom the material or show was made available or exhibited was, at the time, accompanied by his parent or legal guardian, or by an adult with the written permission of the parent or legal guardian. [Acts 1989, ch. 591, § 1.]

**39–17–914. Display for sale or rental of material harmful to minors.**—(a) It is unlawful for a person to display for sale or rental a visual depiction, including a videocassette tape or film, or a written representation, including a book, magazine or pamphlet, which contains material harmful to minors anywhere minors are lawfully admitted.

(b) The state has the burden of proving that the material is displayed. Material is not considered displayed under this section if:

(1) The material is:

(A) Placed in "binder racks" that cover the lower two thirds (⅔) of the material and the viewable one third (⅓) is not harmful to minors;

(B) Located at a height of not less than five and one half feet (5.5') from the floor; and

(C) Reasonable steps are taken to prevent minors from perusing the material;

(2) The material is sealed, and, if it contains material on its cover which is harmful to minors, it must also be opaquely wrapped;

(3) The material is placed out of sight underneath the counter; or

(4) The material is located so that the material is not open to view by minors and is located in an area restricted to adults;

(5) Unless its cover contains material which is harmful to minors, a video cassette tape or film is not considered dis-

played if it is in a form that cannot be viewed without electrical or mechanical equipment and such equipment is not being used to produce a visual depiction; or

(6) In a situation if the minor is accompanied by his parent or guardian, unless the area is restricted to adults as provided for in subdivision (b)(4).

(c) A violation of this section is a Class C misdemeanor for each day the person is in violation of this section. [Acts 1989, ch. 591, § 1; 1990, ch. 1092, § 5.]

**39–17–902. Producing, importing, preparing, distributing, processing or appearing in obscene material or exhibition—Distribution to or employment of minors.**—(a) It is unlawful to knowingly produce, send or cause to be sent, or bring or cause to be brought, into this state for sale, distribution, exhibition or display, or in this state to prepare for distribution, publish, print, exhibit, distribute, or offer to distribute, or to possess with intent to distribute or to exhibit or offer to distribute any obscene matter. It is unlawful to direct, present or produce any obscene theatrical production, peep show or live performance, and every person who participates in that part of such production which renders the production or performance obscene is guilty of the offense.

(b) It is unlawful to hire, employ or use a minor to do or assist in doing any of the acts described in subsection (a) with knowledge that such person is a minor under eighteen (18) years of age, or while in possession of such facts that he should reasonably know that such person is a minor under eighteen (18) years of age. However, this section shall not apply to those acts which are prohibited by §§ 39–17–1003—39–17–1005.

(c)(1) A violation of subsection (a) is a Class A misdemeanor, and, in addition thereto, any corporation or business entity which violates the provisions of this section shall be fined an amount not less than ten thousand dollars ($10,000) nor more than fifty thousand dollars ($50,000).

(2) A second or subsequent violation of subsection (a) is a Class E felony; provided, that such second or subsequent violation occurs after a conviction has been obtained for the previous such violation; provided further, that the range of fines authorized for a first violation by a corporation or business entity shall also be applicable for second or subsequent violations by such corporation or entity.

(d) A violation of subsection (b) is a Class E felony, and, in addition thereto, a violator shall be fined an amount not less than ten thousand dollars ($10,000) nor more than one hundred thousand dollars ($100,000).

(e) It is an exception to this section that the obscene material is possessed by a person having scientific, educational, governmental or other similar justification. [Acts 1989, ch. 591, § 1; 1990, ch. 1092, § 4; 1991, ch. 469, § 1.]

**39–17–903. Seizure of obscene materials—Warrant—Disposition of seized materials.**—(a) Upon a showing of probable cause that the obscenity laws of this state are being violated, any judge or magistrate shall be empowered to issue a search warrant in accordance with the general law pertaining to searches and seizures in this state. The warrant shall authorize or designate a law enforcement officer to enter upon the premises where alleged violations of the obscenity laws are being carried on and take into custody one (1) example of each piece of matter which is obscene. Return on the search shall be in the manner prescribed generally for searches and seizures in the state of Tennessee, except that matter that is seized shall be retained by the district attorney general to be used as evidence in any legal proceeding in which the matter is in issue or involved.

(b) When a search and seizure takes place in accordance with this section, any person aggrieved by such search and seizure, or claiming ownership of the matter seized, may file a motion in writing with the court of record in the jurisdiction in which the search and seizure took place, contesting the legality of the search and seizure or the fact of the obscenity of the matter seized. The court shall set a hearing within one (1) day after the request

therefor, or at such time as the requesting party might agree. In the event the court finds that the search and seizure was illegal or if the court or any other court of competent jurisdiction shall determine that the matter is not obscene, the matter shall be forthwith returned to the person and to the place from which it was taken. [Acts 1989, ch. 591, § 1.]

**39–17–904. Destruction of material upon conviction.**—Upon the conviction of the accused, the court may, when the conviction becomes final, order any matter of advertisement, in respect whereof the accused stands convicted, and which remains in the possession or under the control of the district attorney general or any law enforcement agency to be destroyed, and the court may cause to be destroyed any such material in its possession or under its control. [Acts 1989, ch. 591, § 1.]

**39–17–905. Temporary restraining orders and injunctions—Trial—Judgment—Review.**—(a) The circuit, chancery, or criminal courts of this state and the chancellors and judges thereof shall have full power, authority, and jurisdiction, upon application by sworn detailed petition filed by the district attorney general within their respective jurisdictions, to issue any and all proper temporary restraining orders, temporary and permanent injunctions, and any other writs and processes appropriate to carry out and enforce the provisions of §§ 39–17–901—39–17–908. However, this section shall not be construed to authorize the issue of ex parte temporary injunctions preventing further regularly scheduled exhibition of motion picture films by commercial theaters, such injunction to issue only upon at least one (1) day's notice, but the court may immediately forbid the removing, destroying, deleting, splicing, amending or otherwise altering the matter alleged to be obscene.

(b) The person to be enjoined shall be entitled to trial of the issues within two (2) days after joinder of issue, and a decision shall be rendered by the court within two (2) days of the conclusion of the trial. In order to facilitate the introduction of evidence at any hearing as provided herein, the court is hereby empowered to order defendants named in any proceeding set out herein to produce one (1) copy of the matter alleged to be obscene, along with necessary viewing equipment, in open court at the time of the hearing or at any other time agreed upon by the parties and the court. In proceedings under this section, there shall be no right to trial by jury. If the defendant in any suit for injunction filed under the terms of this section shall fail to answer or otherwise join issue within twenty (20) days after the filing of a petition for injunction, the court, on motion of the district attorney general, shall enter a general denial for the defendant, and set a date for hearing on the questions raised in the petition for injunction within ten (10) days following the entry of the denial entered by the court, and the court shall render its decision within two (2) days after the conclusion of that hearing.

(c) In the event that a final order or judgment of injunction be entered against the person sought to be enjoined, such final order or judgment shall contain a provision directing the person to surrender to the clerk of the court of the county in which the proceedings were brought any of the obscene matter in his possession, and the clerk shall be directed to hold the matter in his possession to be used as evidence in any criminal proceedings in which the matter is in issue but if no indictment is returned concerning the matter within six (6) months of the entry of final order, the clerk shall destroy the matter.

(d) Any party, including the district attorney general, shall be entitled to an appeal from an adverse decision of the court. The granting of an appeal shall have the effect of staying or suspending any order to destroy but not an order to seize such matter, nor shall the granting of an appeal suspend any permanent injunction granted by the trial court. [Acts 1989, ch. 591, § 1.]

**39–17–906. Remedies supplementary.**—(a) The remedies and procedures set out in §§ 39–17–901—39–17–908 are sup-

plementary to each other and no remedy shall be construed as excluding or prohibiting the use of any other remedy.

(b) Except as expressly herein provided, the provisions of §§ 39-17-901—39-17-908 shall not be construed as repealing any provisions of any other statute, but shall be supplementary thereto and cumulative thereto. [Acts 1989, ch. 591, § 1.]

**39-17-907. Restrictions on showings.**—(a) It is unlawful for any person to exhibit for public consumption, whether or not such exhibition is for compensation, any motion picture, film, movie, or videotape which depicts sexual conduct as defined in § 39-17-901, unless such exhibition is within a theater auditorium or other enclosed area which effectively removes such exhibition from the view of members of the public who are not voluntarily engaged in viewing such motion picture, film, movie, or videotape.

(b) Each theater at which two (2) or more motion pictures are shown in the same building shall maintain adequate supervision of the customers to prevent minors from purchasing a ticket or admission pass to a motion picture designated by the rating board of the Motion Picture Association of America by the letter "G" for general audiences or "PG" for all ages, parental guidance advised, and then viewing a motion picture designated "R" for restricted audiences, persons under eighteen (18) not admitted unless accompanied by parent or adult guardian, or "X," persons under eighteen (18) not admitted.

(c) A violation of this statute is a Class A misdemeanor. [Acts 1989, ch. 591, § 1.]

**39-17-908. Enforcement—Initiation of criminal actions—Civil proceedings.**—(a) Criminal action shall commence only on criminal indictment or the issuance of a warrant by a judge of any court of record; provided further, that such commencement of any criminal action shall be made only with the prior knowledge and written approval of the district attorney general or any assistant district attorney general.

(b) The provisions of §§ 39-17-901—39-17-908 may be enforced by either criminal actions or by actions for injunctive relief, or both, and such actions may be commenced simultaneously and proceed independently of each other. [Acts 1989, ch. 591, § 1.]

**39-17-918. Massage or exposure of erogenous areas.**—(a) The following definitions apply in this section, unless the context otherwise requires:

(1) "Compensation" means payment, loan, advance, contribution, deposit, or gift of money or anything of value;

(2) "Erogenous area" means the pubic area, penis, scrotum, vulva, vagina, perineum, anus or breast;

(3) "Massage" means the art of body massage, by hand or with a mechanical or vibratory device, for the purpose of massaging, reducing, or contouring the body, and may include the use of oil rubs, heat lamps, hot and cold packs, tub, shower or cabinet baths. The procedures involved include, but are not limited to, touching, stroking, kneading, friction, vibration, percussion and medical gymnastics; and

(4) "Masseur" or "masseuse" means a person engaged in the activities set forth in subdivision (a)(3).

(b) It is unlawful for a masseur or masseuse to expose his erogenous area for compensation or to touch with any part of his body, or fondle in any manner or massage an erogenous area for compensation. The provisions of this section shall not apply to any person authorized by the laws of this state to practice any branch of medicine, surgery, osteopathy, chiropractic or chiropody, any person holding a drugless practitioner's certificate or any person licensed as a physical therapist, while such person is acting within the scope of the license.

(c) A violation of this section is a Class A misdemeanor. [Acts 1989, ch. 591, § 1.]

REID, Chief Justice.

I concur, and write separately to emphasize that the court in this case does not proscribe expression by arbitrary definition as the majority did in *State v. Marshall,* 859

S.W.2d 289, 295 (Tenn.1993). Instead, the Court decides "whether the State, in serving the compelling interest of protecting minors, has drawn its statute narrowly enough to avoid unnecessarily interfering with free speech rights." The state's interest in protecting minors from harm is not disputed, nor is the premise that the material defined by the statute causes harm to minors. The essential issue is the balancing of the plaintiffs' rights of expression against the state's interest in protecting minors from harm. The statute as construed by the Court, is "the least intrusive means of regulation," and, therefore, does not violate Article I, Section 19 of the Tennessee Constitution. This decision is consistent with the position stated in dissent in *State v. Marshall:*

> [E]xpression may be limited only to protect a compelling state interest, that the means used to protect competing interests must bear a substantial relation to an identified harm, and the least intrusive means must be utilized to accomplish the state interest.

*State v. Marshall,* 859 S.W.2d 289, 295 (Tenn. 1993) (Reid, C.J. concurring and dissenting.)