# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 2, 2016

## VOLUNTEER PRINCESS CRUISES, LLC v. TENNESSEE STATE BOARD OF EQUALIZATION

**Appeal from the Tennessee State Board of Equalization**
**No. P1351706      Executive Secretary, Kelsie Jones**
———————————————————

**No. M2016-00364-COA-R12-CV – Filed October 31, 2016**
———————————————————

A water transportation carrier company challenges the assessment of personal property taxes against it by the Board of Equalization for tax years 2008, 2010, and 2011. With respect to tax years 2010 and 2011, we find merit in the carrier's argument that the record does not establish that the Board provided the carrier with notice sufficient to satisfy due process and, therefore, remand for a determination as to whether the carrier received such notice. As to the Board's back assessment of the carrier for tax year 2008, we affirm the Board's assessment.

**Tenn. R. App. P. 12 Direct Review of Administrative Proceedings; Judgment of the Tennessee State Board of Equalization Vacated in Part, Affirmed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Richard A. McCall and John E. Owings, Knoxville, Tennessee, for the appellant, Volunteer Princess Cruises, LLC.

John Freemont Sharpe, Jr., Assistant General Counsel, for the appellee, Tennessee Comptroller of the Treasury.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Volunteer Princess Cruises, LLC ("Volunteer"), is authorized to conduct business under the laws of Tennessee and has its principal offices in Knoxville, Tennessee. Since

2006, Volunteer has operated a commercial passenger vessel, the "Volunteer Princess," on the Tennessee River. Walter James LeMasurier is the president of Volunteer; the Volunteer Princess is owned by the LeMasurier Family Trust, LLC.

The Office of State Assessed Properties ("OSAP"), a division of the Comptroller of the Treasury, conducts annual assessments of all tangible and intangible properties owned by, and all personal property used or leased by, certain companies, including "[w]ater transportation carrier companies which operate boats . . . over the waterways of this state, for hire . . . domiciled in this state and/or owning or leasing real or personal property located in this state." Tenn. Code Ann. § 67-5-1301(a)(13). These assessments are used by counties and cities for purposes of determining county and city property taxes. *See* Tenn. Code Ann. § 67-5-101 (stating that all property "shall be assessed for taxation for state, county and municipal purposes . . . ."); Tenn. Code Ann. § 67-5-1301 (providing that the Comptroller is authorized to assess water transportation carriers for purposes of state and county taxation).

Pursuant to Tenn. Code Ann. § 67-5-1303,[1] it is the duty of certain property owners to file property tax reporting schedules each year. Volunteer did not file a property tax reporting schedule with OSAP in 2008 because Mr. LeMasurier was under the mistaken belief that it was not liable for property taxes. Volunteer paid its 2009 tax assessment based upon information LeMasurier provided to OSAP. OSAP subsequently reevaluated its 2009 assessment and issued a back assessment dated July 30, 2010. Volunteer filed a timely appeal to that back assessment, which is not part of the current appeal.

On August 2, 2010, OSAP sent a letter to Volunteer with its 2010 ad valorem tax property assessment in the amount of $741,000. Volunteer filed an initial exception to the assessment and, in a letter dated August 17, 2010, informed OSAP that it would not attend the informal hearing the next day but would rely on its exception and previously filed documents. In a letter dated September 7, 2010, addressed to Volunteer, OSAP stated that it had reviewed Volunteer's exception and that the assessment remained at $741,000. The letter further provides that any exceptions not filed by September 27, 2010 would be deemed waived. Volunteer failed to file any further exceptions.

On July 29, 2011, OSAP sent a letter to Volunteer with its 2011 ad valorem tax property assessment in the amount of $706,000. Volunteer filed an initial exception to the assessment and, in a letter dated August 17, 2011, informed OSAP that it would not

---

[1] Tennessee Code Annotated section 67-5-1303 states: "It is the duty of the owners of property mentioned in § 67-5-1301, within the state, to annually file with the comptroller of the treasury on or before April 1, under oath, schedules and statements giving the following information concerning all properties owned or leased by such owners . . . ."

attend the informal hearing the next day but would rely on its exception and previously filed documents. In a letter dated September 6, 2011, addressed to Volunteer's attorney, OSAP stated that it had reviewed Volunteer's exception and that the assessment remained at $706,000. The letter further provides that any exceptions not filed by September 26, 2011 would be deemed waived. Volunteer failed to file any further exceptions.

On August 29, 2011, OSAP issued a back assessment for tax year 2008 in the amount of $626,276 against Volunteer.

On September 24, 2012, Volunteer timely filed an appeal with the Tennessee State Board of Equalization ("the Board") to challenge the tax year 2012 assessment. During that appeal, Volunteer challenged the 2008 and 2009 back assessments/reassessments as well as tax year 2010 and 2011 regular assessments.

The administrative law judge ("ALJ") held a hearing on October 1, 2015 to determine whether the Board had jurisdiction to hear appeals related to tax years from 2008 through 2011. In an order entered on December 23, 2015, the ALJ decided that the Board had jurisdiction to hear the 2009 and 2012 matters and would schedule a hearing to address these appeals. (These tax years are not at issue in this appeal.) The ALJ dismissed Volunteer's appeals of the back assessment for tax year 2008 and the regular assessments for 2010 and 2011. Volunteer appealed this decision to the Assessment Appeals Commission and, on March 24, 2016, the Commission ordered that the appeals relating to the 2008, 2010, and 2011 tax years be dismissed and that this decision was a final judgment.

Volunteer then filed a petition for judicial review of the Board's decision in this Court in accordance with Tenn. Code Ann. § 4-5-322(b)(1)(B)(iii).[2] On appeal, Volunteer raises several issues, which we summarize as follows:

(1) Whether the ALJ erred in finding that the Comptroller "issued" 2010 and 2011 exception review notices.
(2) Whether the ALJ's application of Tenn. Code Ann. § 67-5-1327(c) to the 2010 and 2011 tax year assessment dismissals is in violation of constitutional and statutory provisions or, alternatively, whether Tenn. Code Ann. § 67-5-1327(c) is unconstitutional.
(3) Whether the ALJ's dismissal of Volunteer's challenge as to the tax year 2008 back assessment/reassessment is arbitrary and capricious.

---

[2] Tennessee Code Annotated section 4-5-322(b)(1)(B)(iii) states that anyone aggrieved by "a final decision of the state board of equalization in a contested case involving centrally assessed utility property assessed in accordance with title 67, chapter 5, part 13, shall file any petition for review with the middle division of the court of appeals."

STANDARD OF REVIEW

Tennessee Code Annotated section 4-5-322(h) sets forth the standards that govern our review of cases brought under the provisions of the Uniform Administrative Procedures Act ("UAPA"), including Tenn. Code Ann. § 4-5-322(b)(1)(B)(iii). *Office of the Att'y Gen. v. Tenn. Regulatory Auth.*, No. M2003-01363-COA-R12-CV, 2005 WL 3193684, at *8 (Tenn. Ct. App. Nov. 29, 2005). Tennessee Code Annotated section 4-5-322(h) states:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Under the UAPA, this Court must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007). Substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009) (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). It is "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App.1988)).

The UAPA's narrow standard of review for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne Cnty.*, 756 S.W.2d at 279. This Court cannot displace the agency's judgment as to the weight of the evidence even where there is evidence that could support a different result. *Id.*

ANALYSIS

I.       2010 and 2011 exception review notices

Volunteer's first two arguments address the issue of notice under Tenn. Code Ann. § 67-5-1327. We have determined, after a careful review of the record, that the ALJ failed to make sufficient findings on the issue of notice.

Tennessee Code Annotated section 67-5-1327 provides for a two-level process of exceptions to assessments for utilities and carriers such as Volunteer:

(a) On or before the first Monday in August, assessments shall be completed and the comptroller of the treasury shall send a *notice of assessment* to each company assessable under this part.
(b) Within ten (10) days from the first Monday in August, any owner, or user, the state or any county, municipality, or incorporated town may appear and file exceptions to such assessment, together with such evidence as the owner, user, state, county, municipality or incorporated town may desire to submit as to the value of the property assessed, and at the expiration of the ten (10) days, the comptroller of the treasury shall convene an informal hearing and examine such additional evidence and exceptions as may have been filed, and act thereon, either changing or affirming its valuation. All persons or entities authorized to file an exception under this section but failing to file an exception within the time permitted shall be deemed to have waived any objection to the assessments.
(c) On or before the first Monday in September, the comptroller of the treasury shall file with the board of equalization the assessments made by the comptroller, together with such records as may be deemed necessary. The comptroller of the treasury shall *send notice* to any person or entity filing an exception to the action taken on the exception, and persons or entities affected by the comptroller of the treasury's action on the exceptions may file further exceptions with the state board of equalization, for review pursuant to § 67-5-1328. All persons or entities authorized to file an exception under this section but failing to do so on or before twenty (20) days from the first Monday in September shall be deemed to have waived any objection they may otherwise have raised with regard to the assessments.

(Emphasis added). Volunteer filed an exception to the initial notices of assessment in 2010 and 2011, but did not file an exception to the comptroller's action on that exception. Thus, Volunteer was deemed to have waived further objection.

For tax year 2010, the record contains a Public Utility Ad Valorem Property Tax Assessments letter dated August 2, 2010 addressed to Volunteer from OSAP with an assessment amount of $741,000 (Exhibit 5); an exception letter dated August 9, 2010 from attorney Scott Hurley to OSAP (Exhibit 6); a letter dated August 17, 2010 from Mr. Hurley to OSAP stating that he and his client would not be attending the hearing on August 18 but would rely on their previously filed exceptions and documents[3] (Exhibit 7); New Recommendation of the 2010 Ad Valorem Assessment, dated September 7, 2010, addressed to Mr. Hurley from the Comptroller, stating that Volunteer's exception had been reviewed and that the assessment remained at $741,000 (Exhibit 8); and an Order and Certification of Assessment dated September 7, 2010 (Exhibit 9).

For tax year 2011, the record contains a Public Utility Ad Valorem Property Tax Assessments letter dated July 29, 2011 addressed to Volunteer from OSAP with an assessment of $706,000 (Exhibit 10); an exception letter dated August 9, 2011 from Mr. Hurley to OSAP (Exhibit 11); a letter dated August 17, 2011 from Mr. Hurley to OSAP, which is substantially the same as the letter sent a year earlier (Exhibit 12); a letter from the Comptroller to Mr. Hurley dated September 6, 2011, stating that the Comptroller had reviewed Volunteer's exception and that the assessment remained at $706,000 (Exhibit 13); and an Order and Certification of Assessment dated September 6, 2011 (Exhibit 14).

At the hearing on October 1, 2015 before the ALJ, Mr. Hurley, the attorney for Volunteer, testified regarding his recollection of the 2010 and 2011 assessment review process. As to the 2010 tax year, Mr. Hurley was asked whether OSAP informed him of the outcome of the August 18, 2010 hearing. He testified that he recalled seeing a letter "in the past saying that [there had been a final determination], and I can't remember for which year, . . . and that the taxpayer's exceptions were being disregarded, and that the value would stand, but I do not recall ever receiving an order indicating a final determination on any of these years." With regard to Exhibit 8, Mr. Hurley stated that he did not remember when he first saw this letter, but he believed that, had he seen it in September 2010, he would have taken appropriate action. He acknowledged, however, that he did not know when he saw the letter. On cross-examination, Mr. Hurley testified:

> Exhibit 8 purports to be a new recommendation on the 2010 ad valorem assessment. That's what it says it is, and I believe that this document was in my file, and I believe that I did see it back at or about that time, but I did not perceive this to be an order, and to my knowledge never received an order.[4]

---

[3] In this letter, Mr. Hurley also stated: "It is my understanding that either my client and/or I will be notified of the decision resulting in [tomorrow's] Hearing, and that we can then have further opportunity for appeal to the extent that the tax payer deems the same to be necessary."

[4] Exhibit 8 includes the following language: "All persons or entities authorized to file an exception pursuant to Tenn. Code Ann. § 67-5-1327(c) but failing to do so by Monday, September 27,

On redirect, Mr. Hurley stated he was not sure when he saw Exhibit 8. At the end of Mr. Hurley's testimony, the ALJ asked him to clarify his statements regarding when he had seen Exhibit 8. Mr. Hurley testified that he had "no indication whatsoever that this document arrived in my office from any source within a matter of time that would have allowed us to act on it." As to Exhibit 9, Mr. Hurley stated that he had "absolutely zero recollection of this order or any other order and to the best of my knowledge sitting here testifying today, I did not see this order until very recently as provided by counsel."

Mr. Hurley's testimony on the 2011 review process was similarly vague. Volunteer filed exceptions with respect to the notice of assessment. Mr. Hurley described all of the relevant documents in the record, Exhibits 10 through 14, and stated that he had "no recollection of ever receiving, seeing or obtaining a copy of [Exhibit 14] certainly during that time frame other than I have recently seen it as provided by your office, counsel." Mr. Hurley never made a clear statement as to whether he did or did not receive Exhibit 13 in his direct testimony. Exhibit 13 states: "The appropriate filing fees can be found on the attached letter." When asked whether he received anything regarding filing fees, Mr. Hurley stated that he did not recall receiving any such attachment. When asked at the end of his testimony to clarify when he had seen Exhibit 13, Mr. Hurley stated that he could not say.

In his December 2015 order, the ALJ found: "On September 7, 2010, the Comptroller *issued* an exception review notice stating that the tax year 2010 assessment would be upheld at $741,000. Ex. 8." (Emphasis added). The ALJ similarly found: "On September 6, 2011, the Comptroller *issued* an exception review notice stating that the tax year 2011 assessment would be upheld at $706,000. Ex. 13." (Emphasis added). In dismissing Volunteer's complaint, the ALJ did not address the issue of whether Volunteer received adequate notice because, according to the ALJ, "the Comptroller was only required to issue the notices." The ALJ went on to suggest that even "a failure to issue the notices would be of questionable legal import in light of the strict deadlines imposed on taxpayers by Tenn. Code Ann. §§ 67-5-1327 and 67-5-1329(a)."

We decline to adopt the reasoning employed by the ALJ. This court "must construe a statute so as to avoid a constitutional conflict if any reasonable construction exists that satisfies the Constitution's requirements." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 522 (Tenn. 2005) (citing *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 529 (Tenn. 1993)). Thus, we conclude that the Board must determine whether Volunteer received notice sufficient to satisfy the requirements of due process. This requires a credibility determination with regard to the testimony of Mr.

2010, shall be deemed to have waived any objection that may otherwise have been raised to this assessment." The letter is signed "BY ORDER OF THE COMPTROLLER OF THE TREASURY: [Signature of the Assistant to the Comptroller for Assessments]."

Hurley, a determination which the ALJ, as the finder of fact, is in the best position to make. *See Scales v. Civil Serv. Comm'n*, No. M2009-00621-COA-R3-CV, 2010 WL 2160749, at *3 (Tenn. Ct. App. May 27, 2010). Therefore, we vacate the ALJ's dismissal of Volunteer's claims regarding the 2010 and 2011 tax assessments and remand for a determination of whether Volunteer received proper notice.

II.     2008 back tax assessment

Volunteer further asserts that the trial court's dismissal of its challenge to the tax year 2008 back assessment/reassessment was arbitrary and capricious. We disagree.

The pertinent facts are as follows: Volunteer failed to file ad valorem taxes for 2008. At the hearing, Mr. LeMasurier testified that he relied, in part, upon assurances from Shannon Tucker at OSAP that "we don't think you will be taxed for 2008."[5] On August 29, 2011, OSAP sent a tax year 2008 notice of back assessment in the amount of $626,276. Volunteer failed to file an appeal to the Board within sixty days as required by Tenn. Code Ann § 67-1-1005(b).[6] In its September 2012 appeal to the Board concerning its tax year 2012 assessment, Volunteer sought to challenge the 2008 back assessment.

In denying Volunteer's challenge to the 2008 back assessment, the ALJ reasoned, in part, as follows:

> Testimony on behalf of the taxpayer suggested that the tax year 2008 back assessment/reassessment notice was never received or was untimely received. Respectfully, such a factual position would strain credulity given that the face of the exhibit bears facsimile transmission information indicating the document was faxed *by the taxpayer* on September 19, 2011, well within the sixty day deadline for the taxpayer to appeal the back assessment/reassessment
>
> The administrative judge further finds that given the virtually identical natures of the tax year 2009 back assessment/reassessment notice (issued prior to the tax year 2008 back assessment/reassessment notice and for which the taxpayer did timely file an appeal), Ex. 3, and the tax year 2008 back assessment/reassessment notice, Ex. 1, any formal inadequacies in the notice were of no consequence and did not result in a "denial of

---

[5] The Board raised a hearsay objection to this testimony on the ground that Mr. Tucker was employed by a party and had not been subpoenaed. The ALJ took the objection under advisement until the conclusion of the hearing, but never revisited the issue.

[6] When asked whether he filed an appeal of the back assessment, Mr. Hurley testified: "Counsel, to the best of my knowledge, I did not."

minimum constitutional guarantees."[7]

On appeal, Volunteer argues that Mr. LeMasurier acknowledged receiving the letter from OSAP identified as Exhibit 1 from Knox County, but not from OSAP. The testimony to which Volunteer cites in the record concerns tax year 2009. With respect to tax year 2008, Mr. LeMasurier testified as follows:

Q. All right. Do you recognize Exhibit 1?
A. Yes.
Q. Okay. What is it?
A. It's a letter once again from Barry Murphy to the Trustee of Knox County, Honorable John Duncan.
Q. All right.
A. And it shows that they are now taxing me or assessing me for the tax year 2008. It is dated August the 29th, 2011. I did not receive this letter. I was given a copy by the Trustee's Office.
Q. When were you given a copy of this letter?
A. I don't – I don't recall. It was obviously after August 29th.
Q. Do you recall who gave you the copy from the Trustee's Office?
A. No, sir, I really don't. I probably went – I just don't remember.

We agree with the ALJ that the following facsimile transmission data appearing on the top of Exhibit 1 is significant: "SEP-19-2011 09:55A FROM: VOLUNTEER PRINCESS C [followed by a telephone number and a 'TO' number]." Tennessee Code Annotated section 67-1-1005, which governs the procedure for back assessments, provides, in pertinent part:

(b) A back assessment or reassessment may be initiated by certification of the assessor of property to the appropriate collecting officials identifying the property and stating the basis of the back assessment or reassessment and the tax years and amount of any additional assessment for which the owner or taxpayer is responsible. *The assessor shall send a copy of the certification to the owner or taxpayer.* The collecting official shall then send a notice of taxes due based on the back assessment and reassessment. *Any person aggrieved by a back assessment or reassessment may appeal directly to the state board of equalization within sixty (60) days from the date that a copy of the certification is sent to the taxpayer*, in the manner provided in § 67-5-1412, and such person may be assisted or represented in the appeal as provided in § 67-5-1514. Accrual of delinquency penalty and interest otherwise applicable is suspended while the appeal is pending; but, during such period, simple interest shall accrue in the amount provided in §

---

[7] Tenn. Code Ann. § 67-5-509(b).

67-5-1512.

(Emphasis added).  Based upon the fax information at the top of Exhibit 1, we can infer that Volunteer received timely notice of the back assessment from the Knox County trustee and could have appealed within the sixty-day period.

Volunteer further argues that the ALJ's dismissal of its appeal of the 2008 back assessment was arbitrary and capricious because the back assessment was brought "well beyond and outside the statute of limitations set forth in Tenn. Code Ann. § 67-1-1005." Volunteer did not file a reporting schedule for tax year 2008.  Tennessee Code Annotated section 67-1-1005 governs the back assessment process and time deadlines:

> (a) A back assessment or reassessment must be initiated on or before September 1 of the year following the tax year for which the original assessment was made, *unless the omission or underassessment resulted from failure of the taxpayer to file the reporting schedule required by law*, from actual fraud or fraudulent misrepresentation of the property owner or the property owner's agent, or from collusion between the property owner or the property owner's agent and the assessor. *In the latter cases, a back assessment or reassessment must be initiated on or before three (3) years from September 1 of the tax year for which the original assessment was made.* Additional taxes due as the result of a back assessment or reassessment shall not be deemed delinquent until sixty (60) days after the date notice of taxes arising from the back assessment or reassessment is sent to the taxpayer, unless the back assessment or reassessment resulted from failure of the taxpayer to file the reporting schedule required by law, from actual fraud or fraudulent misrepresentation of the property owner or the property owner's agent, or from collusion between the property owner or the property owner's agent and the assessor. In the latter cases, such taxes shall become delinquent as of the date of delinquency of the original assessment.

As mentioned earlier, property owners such as Volunteer are required by Tenn. Code Ann. § 67-5-1303 to file an annual reporting schedule.  Because Volunteer failed to file a reporting schedule for tax year 2008, the Board's back assessment had to be "initiated on or before three (3) years from September 1 of the tax year for which the original assessment was made."  Tenn. Code Ann. § 67-1-1005(a).  The Board initiated its back assessment by sending Exhibit 1 on August 29, 2011, which is within three years of September 1, 2008.  Thus, Volunteer's statute of limitations argument is without merit.

We likewise find no merit in Volunteer's other arguments.  Mr. LeMasurier testified that, when he consulted OSAP officials concerning his 2009 taxes, based upon what he told them, they did not think he would owe taxes for 2008:

> At that same meeting [with OSAP officials concerning 2009 taxes] incidentally I brought up the fact of this is for 2009, what about 2008, and his [Shannon Tucker's] response was because of what you have been told and what you have done, we don't think that you will be taxed for 2008.

Volunteer has presented no authority whereby a conditional statement made by an official based upon partial information justifies reliance and nonpayment of taxes. The ALJ heard this testimony and, implicitly, rejected it. Moreover, Volunteer's assertion that it failed to file taxes in 2008 because of representations by OSAP and Knox County officials could have been raised in an appeal of the 2008 back tax assessment.

The ALJ's decision to dismiss Volunteer's appeal of the 2008 tax year back assessment is not arbitrary and capricious and is supported by material evidence.

CONCLUSION

For the foregoing reasons, the decision of the Board of Equalization is vacated in part, affirmed in part, and remanded for further proceeding consistent with this opinion. Costs of the appeal are assessed equally against the appellant and the appellee.

_____
ANDY D. BENNETT, JUDGE